23306

In the Matter of Charles B. BOWERS.

(400 S.E. (2d) 134)

Supreme Court

Atty. Gen. T. Travis Medlock, Deputy Atty. Gen. William K. Moore, and Asst. Atty. Gen. James G. Bogle, Columbia, for complainant.

Nathan Crystal and Harold Jacobs, Columbia, for respondent.

Heard Dec. 11, 1990.

Decided Jan. 21, 1991.

Per Curiam:

In this attorney discipline matter, respondent has been charged with numerous acts of misconduct involving thirteen different complainants as well as general allegations involving the misuse of trust account funds. Respondent became heavily

involved in investing his personal funds in futures trade options. When his personal funds were depleted, he borrowed money from his clients and friends to invest and has failed to repay the amounts due. He also borrowed money from clients' funds without their knowledge. Over a two year period, respondent lost all of the money totalling approximately $1.4 million in futures and stock option trading. Respondent admitted most of the allegations against him, but relied upon the disease of pathological compulsive gambling in mitigation of his actions.

The Hearing Panel and Executive Committee of the Board of Commissioners on Grievances and Discipline found that respondent had committed acts of misconduct and recommended disbarment. The Executive Committee also recommended that respondent be required to make restitution for all debts before he is allowed to apply for readmission to the Bar. We agree with the findings of misconduct and that disbarment is an appropriate sanction. We decline, however, to impose the condition that restitution be made before respondent may apply for readmission. Disbarment is the ultimate sanction of lawyer misconduct. Restitution and obedience to all legal responsibilities are among the factors which may be considered along with numerous other factors when or if respondent applies for readmission.

### Taylor Matter

On July 27 and August 3, 1988, respondent signed three promissory notes whereby he promised to repay Dr. Robert R. Taylor the sum of $104,500. Respondent told Dr. Taylor he had a client that needed money for bidding purposes on the construction of apartments. Respondent did not inform Dr. Taylor that he intended to use these funds for futures trading. Respondent defaulted on the promissory notes, and all of the notes remain unpaid. Judgment has been entered against respondent on these unpaid amounts. Respondent converted these funds to his own use without Dr. Taylor's knowledge.

### Belser Matter

Originally, Mrs. Karen R. Belser contacted respondent for investment purposes, though he did do some legal work for her also.

In October and November 1986, respondent signed four promissory notes payable to Mrs. Belser totaling $113,000 bearing a high interest rate. Respondent told Mrs. Belser the funds were needed by someone buying a truck for hauling dirt to the Koger Center.

Respondent did make some interest payments, but they were untimely and some checks were returned for insufficient funds. To date, over $20,000 in interest and the $113,000 in principal remains due and owing. Mrs. Belser has filed a civil action against respondent. Mrs. Belser was not informed that the purpose of the funds was for respondent's personal use in trading of futures options. Respondent converted these funds to his personal use without Mrs. Belser's knowledge.

### Desrochers Matter

In September 1988, respondent handled a real estate closing on behalf of Mr. Eugene R. Desrochers. Respondent did not pay off the first and second mortgage for a three week period. Further, respondent caused a check to be issued to Mr. Desrochers in the amount of $31,000 which was returned for insufficient funds. The check was made good approximately three weeks after the closing. Respondent misled Mr. Desrochers by saying his secretary had failed to make the deposit as he had instructed and there was a problem with the bank.

Respondent converted the $31,000 proceeds for his gambling unbeknownst to Mr. Desrochers. Further, respondent improperly used trust accounts.

### Everett Matter

Mr. Everett, an attorney and a home builder, sold one of his homes to a buyer. Respondent handled the real estate closing but failed to pay off the first mortgage for a three month period.

Respondent requested of Mr. Everett that the payoff check not be deposited until respondent called Mr. Everett informing him that the check had cleared. Mr. Everett was agreeable to allowing this, but not for a three-month period. The payoff check was not timely received thereby hurting Mr. Everett's credit, whose name the mortgage was in. After a three-month delay, respondent did pay the first mortgage.

Respondent converted the first mortgage payoff to his own use for three months.

### Thompson Matter

Mr. Broadus Thompson was a client of respondent, as well as a friend. Mr. Thompson was involved in a series of loans to respondent, always for the purpose of money needed by a mystery man. The mystery man usually had a real estate deal pending and a closing delayed. Although respondent was a slow pay, most of the loans were repaid at high interest rates. However in June of 1988, respondent borrowed approximately $31,000. Respondent repaid that loan with a trust account check at the specific request of Mr. Thompson, but the trust account check was returned for insufficient funds. Payment has never been made, and Mr. Thompson has filed a civil action against respondent.

Respondent misled Mr. Thompson in the use for which he intended the funds, converted these funds, and misused his trust account.

### Gower Matter

Mrs. Juanita C. Gower was a client of respondent. In January 1988, respondent informed her that he had a client interested in a medical supply business who needed to raise $100,000. Mrs. Gower did not have $100,000, but did have $10,000 that she could invest at a high interest rate.

Respondent deceived Mrs. Gower and converted the $10,000 to his own use for gambling. This $10,000 loss caused Mrs. Gower emotional problems. Mrs. Gower is adamant that she did not loan money to respondent, instead, she invested money with him. She has not been repaid.

Respondent deceived Mrs. Gower and converted her funds to his own use.

### Martin Matter

Mr. John G. Martin is an attorney who has his own title insurance company. Respondent was an agent for this title insurance company. In November 1988, a title insurance check was returned for insufficient funds. When Mr. Martin did some checking at the courthouse, he found many judgments against respondent and terminated respondent's agency agreement.

### McManus Matter

The McManus brothers have been friends of respondent since childhood. Respondent approached the McManus family and informed them he knew of a South Carolina financial institution about to merge which would be a good investment for the McManuses. The McManus family gave respondent $185,000 to invest in this South Carolina financial institution.

Mr. U.P. McManus needed funds, and in December 1988 respondent gave him two checks in the amount of $10,000. These checks were returned for insufficient funds two times. When this occurred, respondent realized his game was over, and he went to the McManus brothers and told them that he had not invested their money in the South Carolina financial institution but had invested it in the futures and stock options market and had lost it all.

Respondent converted the McManus monies to his own use constituting, among other things, a breach of trust.

### Cone Matter

Respondent and Mrs. Margaret T. Cone had been close family friends for many years. Respondent served as co-trustee on a trust account of Mrs. Cone. In May 1987, respondent requested a $48,000 disbursement from the trust account. In October 1988, respondent requested a $31,000 disbursement.

Mrs. Cone is now in a nursing home and borders on being incompetent. Respondent insisted that if Mrs. Cone were competent, she would have wanted him to have the money to use as he saw fit. He adamantly denied that using Mrs. Cone's money for the futures and stock options trading would have been against her wishes had she realized what he was doing.

The panel found that respondent deceived Mrs. Cone or took unfair advantage of her in her delicate condition. The panel further found respondent had a fiduciary duty to Mrs. Cone as a trustee of her trust account and breached that fiduciary duty by converting her funds to his own gambling use.

### Wilson Matter

In 1977 or 1978, respondent contacted Mr. George Wilson concerning a potential investment in Viking Associates, a venture group involved in real estate investments. Mr. Wilson invested $10,000 in the venture. In 1989, Mr. Wilson learned

that the venture property had been sold in 1986. When he contacted respondent, he was told all other shares of the proceeds of the sale except for one other had been paid, but to date respondent has failed to deliver to Mr. Wilson his share of the proceeds.

Respondent converted the $10,000 to his own use for gambling unbeknownst to Mr. Wilson.

### Bowe Matter

Dr. Edwin E. Bowe was a client of respondent who made several loans to him over the years which were paid back. In the summer and fall of 1987, respondent told Dr. Bowe he had a client needing bridge loans for financing until bank loans cleared. Dr. Bowe's understanding was that a contractor or developer needed this money and that he would be given a high interest rate. Dr. Bowe invested over $530,000 of his pension funds with respondent which respondent gambled away. Dr. Bowe had to return to work from his retirement in order to support his family.

Dr. Bowe was also given mortgages as security on some of the funds loaned, but these mortgages were of questionable value, and respondent specifically told Dr. Bowe that he need not record these mortgages. Dr. Bowe has filed a civil action against respondent to recover the monies owed.

### Emmons Matter

In 1987, respondent was designated personal representative of the Estate of Mrs. Constance Emmons. Between December 1987 and December 1988 respondent took approximately $230,000 from the estate without the knowledge or consent of the heirs, giving back to the estate unsecured promissory notes.

Respondent admitted that he took the money from the estate and gambled it away; however, he denied he did this unlawfully since the will gave him the right to make investment decisions, and gambling is how he chose to invest it.

The panel found that this money was unlawfully and illegally converted. While respondent may have had the right to wisely invest this money, he did not have the right to gamble and lose it as he did. Further, to do so was in direct breach of his fiduciary duties as the personal representative of this estate.

## Pate Matter

Mr. Luther Brent Pate was a client of respondent and also a beneficiary of the Emmons' Estate mentioned above. Mr. Pate was told that respondent had a construction client that needed a loan. Based upon this representation, Mr. Pate loaned respondent $10,000. In December 1988, respondent gave Mr. Pate a personal check which was returned for insufficient funds. Mr. Pate has instituted legal proceedings against respondent.

Additionally, Mr. Pate is entitled to $10,000 under the Emmons' will which he has not received because it was converted by respondent for his gambling uses.

Respondent deceived Mr. Pate and converted the $20,000 to his gambling uses.

## Judgments

As of March 1989, respondent had over $865,000 of judgments filed against him in Richland County. As of the same date, respondent had twelve civil actions pending against him in Richland County.

## Trust Account Violations

Respondent had improperly written checks from his trust account to certain brokerage firms and has used trust account funds to pay personal obligations. Further, respondent has caused negative account balances in his trust account.

We agree with the findings of the Panel and Executive Committee that respondent is guilty of the following professional misconduct:

1. Illegal conduct involving moral turpitude in violation of DR-1-102[A](3);

2. Conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of DR-1-102[A](4);

3. Conduct prejudicial to the administration of justice in violation of DR-1-102[A](5);

4. Conduct which adversely reflects upon his fitness to practice law in violation of DR-1-102[A](6);

5. Knowingly using a confidence or a secret of a client to the disadvantage of a client in violation of DR-4-101[B](2);

6. Entering into business transactions with clients in which respondent and his clients had differing interests without full disclosure and consent of said clients in violation of DR-5-104[A]; ·

7. Prejudicing or damaging clients during his representation of them or during the course of the professional relationship in violation of DR-7-101[A](3);

8. Failing to preserve and maintain the identity and integrity of funds entrusted to him by clients in violation of DR-9-102;

9. Conduct which tends to bring the courts and legal profession into disrepute under [Paragraph 5, Subdivision D] Section 5(d);

10. Conduct which demonstrates a lack of professional competence in the practice of law in violation of Section [Paragraph] 5 of the rule on Disciplinary Proceeding, Section [Subdivision] E; and

11. Violating the Attorney's Oath of Office or the Code of Responsibility whether or not the acts or omissions occurred in the course of an attorney/client relationship in violation of Section 5(a) [Paragraph 5, Subdivision A].

While evidence was presented that respondent was suffering from the disease of pathological gambling, this condition cannot excuse conduct which warrants disbarment. Compare with *In the Matter of Perry*, 291 S.C. 124, 352 S.E. (2d) 479 (1987) and *In the Matter of Lempesis*, 293 S.C. 510, 362 S.E. (2d) 10 (1987).

Based on the serious nature of respondent's ethical violations, we conclude that disbarment is the appropriate sanction.

Respondent is disbarred from the practice of law in this state. This disbarment shall run from April 6, 1989, the date he was temporarily suspended from the practice of law. The respondent is also ordered to pay the hearing costs incurred. He shall, within fifteen (15) days of the date of service upon him of this opinion, surrender his license to practice law to the Clerk of Court and shall comply with all other requirements set forth in the Rule on Disciplinary Procedure.