24404

In the Matter of William M. BOWEN, Respondent.

(469 S.E. (2d) 46)

Supreme Court

*Kermit S. King,* of *King & Vernon, P.A.,* and *Nathan M. Crystal,* Columbia, *for respondent.*

*Charles Molony Condon, Attorney General,* and *J. Emory Smith, Jr., Assistant Deputy Attorney General,* Columbia, *for complainant.*

Heard Feb. 7, 1996.

Decided Apr. 8, 1996.

*Per Curiam:*

In this attorney discipline matter, the Hearing Panel found respondent had committed misconduct in his handling of a checking account, belonging to a long-term client, on which he was a signatory. It recommended a public reprimand. The Executive Committee of the Board of Commissioners on Grievances and Discipline adopted the Panel's findings of fact and conclusions of law. By a vote of four to three, it also recommended a public reprimand; the three dissenting members recommended a six-month suspension. We agree with the dissenting Board members that a six-month suspension is the appropriate sanction for misconduct that occurred in this case.

## FACTS

Respondent first represented John S. Cram, III in 1968 on a tax matter. Since that time he has continued to represent Mr. Cram on a variety of matters. In the early 1970s, Mr. Cram made respondent a signatory on his personal bank account. At some point respondent became a named person on the account.

Mr. Cram did not work; he received a monthly income as a beneficiary of a family trust. In 1985 this trust terminated, entitling him to a distribution of approximately $1.3 million. This sum was put in a life trust, again with Mr. Cram receiving a monthly distribution into his bank account. Respondent would then pay Mr. Cram's living expenses out of the account.

In 1990 the probate court ordered respondent to produce an accounting for Mr. Cram's bank account for the years 1988-1990 (and farther back if possible) relating to certain matters then before it.[1] After respondent produced this accounting, complainant, Mr. Cram's half brother, initiated the instant grievance.

Further investigation into Mr. Cram's account revealed that

---

[1] One of the matters before the probate court was the issue of Mr. Cram's competency. Mr. Cram was permanently injured in 1971 when he was hit in the head by a brick thrown through his car window. He was found legally incapacitated, pursuant to S.C. Code Ann. § 62-5-101 (Supp. 1995), by the probate court in 1993.

from 1985 to 1990 respondent wrote checks to his law firm and his credit card companies totalling approximately $168,000. Specifically, about $115,000 was paid to his credit cards during these years. Respondent claims all checks were written to pay legal fees or expenses, or to repay firm advances made to Mr. Cram. According to him, he paid approximately $6,000 as legal expenses, $152,000 as legal fees, and $10,000 as repayment of firm advances. In explanation, respondent asserts that between 1970 and 1985 he provided legal work for Mr. Cram, but Mr. Cram could not afford to pay him more than approximately $2,000 a year. It was agreed that when Mr. Cram's family trust terminated, respondent would be compensated for his prior work. Therefore, the payments under scrutiny represented payment for current as well as past legal work.

Respondent was only able to provide billing statements for approximately $85,000 to substantiate his claim. No invoices exist at all until January 1986. When questioned about whether he reported the payments to his credit card companies as income on his tax returns for the relevant years, respondent stated it did not occur to him until the probate accounting in 1990 that these payments were income. At that time he filed amended tax returns reflecting this additional income.

## DISCUSSION

This court has the ultimate authority to discipline attorneys, and the findings of the Board are not binding. *Matter of Dobson*, 310 S.C. 422, 427 S.E. (2d) 166 (1993). However, such findings are entitled to great weight. *Matter of Lake*, 269 S.C. 170, 236 S.E. (2d) 812 (1977). This is particularly so when the inferences to be drawn from the testimony in the record depend largely on the credibility of witnesses. *In re Bloom*, 265 S.C. 86, 217 S.E. (2d) 143 (1975).

Respondent argues Mr. Cram orally authorized him to make all payments under scrutiny. However, giver Mr. Cram's mental state,[2] we find any authorizations given

---

[2] Even though Mr. Cram was not found incapacitated by a court until 1993, there is ample evidence in the record to show he was unable to make any decisions concerning his finances during the years involved in this case. Mr. Cram was described by one doctor as unable to stand up to a strong person and susceptible to being manipulated or taken advantage of. "Given his inability to

by him ineffective to justify respondent's actions, particularly when considering the methods respondent employed to receive them. Respondent testified he would tell Mr. Cram, "I need money and you can afford it this month. How about let me have some money [toward your outstanding account]?" Mr. Cram would reply, "Fine." Respondent did not tell Mr. Cram what any payments were going to, nor did he ever show Mr. Cram records of the services rendered for which Mr. Cram owed money. Respondent was in a fiduciary relationship with Mr. Cram, and it is apparent that Mr. Cram placed a great deal of trust in him. We find respondent abused that trust.

In its report, the hearing panel found:

> Respondent's testimony regarding his authorization for writing the checks on the special account for the benefit of Respondent and his firm is simply not credible. Even if Respondent had an oral authorization for Mr. Cram, it was the authorization of a person who clearly was not able to handle his personal or financial affairs and who was later determined incompetent.

> Respondent did not have a written fee agreement with Mr. Cram. His record keeping regarding his fees and expenses incurred regarding Mr. Cram were poor, at best. Respondent did not send an itemized bill to Mr. Cram on a regular basis or at regular intervals in any way, shape, or form. He did not keep Mr. Cram apprised as to the fees which Mr. Cram was incurring as a result of Respondent's representation of him. Respondent obviously had a close fiduciary relationship with Mr. Cram. He did not keep Mr. Cram informed in writing as to the actions which were being taken on behalf of him by Respondent. Due to Mr. Cram's eccentric behavior, incompetency, and inability to attend to his basic daily needs, Respondent should have had some written documentation as to the representation that he was providing to Mr. Cram and there should have been a regular accounting made of Respondent's activi-

understand many important issues in regard to his financial affairs, and his lack of comprehension of what people charge him, or how his money is invested or used, and even his confusion about how much he has and what happens to it, he is clearly not able to guide his own financial destiny. He is very prone to trust those around him, and count on them to make the right decisions."

ties, in writing, together with appropriate billings. The manner in which Respondent paid his personal credit cards from Mr. Cram's "special account" allegedly as fees due Respondent was not credible.

There is evidence in the record to support these findings and we agree with them. Inasmuch as respondent relies on EC 7-12, which addresses an attorney's responsibility when dealing with an incapacitated client, to justify his dealings in this regard, such reliance is misplaced. These comments provide that "[a]ny mental or physical condition of a client that renders him incapable of making a considered judgment on his own behalf *casts additional responsibilities upon his lawyer.*" (Emphasis added.)

> In the disability of a client and the lack of a legal representative compel the lawyer to make decisions for his client, the lawyer should consider all circumstances then prevailing and act with care to safeguard and advance the interests of his client. But obviously a lawyer cannot perform any act or make any decision which the law requires his client to perform or make. . . .

EC 7-12, Rule 32, SCRPP. Respondent had sole discretion over Mr. Cram's account. Under these circumstances, we cannot read this section to also give him the discretion in determining when it was appropriate to pay himself.

We find the record contains clear and convincing evidence that respondent misappropriated Mr. Cram's funds to his own use and failed to render a proper accounting regarding client property, demonstrating his unfitness to practice law. DR 9-102, Rule 33, SCRPP. He has thus engaged in conduct prejudicial to the administration of justice, demonstrating his unfitness to practice law. DR 1-102, Rule 32, SCRPP.

This court has imposed a public reprimand in cases where the attorney's misconduct consisted solely of negligent recordkeeping, i.e. where no misappropriation was found. *See In the Matter of Bell,* 304 S.C. 529, 405 S.E. (2d) 825 (1991) (per curiam); *In the Matter of Riley,* 298 S.C. 329, 380 S.E. (2d) 816 (1989) (per curiam); *In the Mater of Nida,* 297 S.C. 541, 377 S.E. (2d) 580 (1989) (per curiam). Respondent's conduct goes beyond negligent recordkeeping and

we thus find the appropriate sanction is a six-month suspension from the practice of law. *See In the Matter of Sipes*, 297 S.C. 531, 377 S.E. (2d) 574 (1989) (per curiam) (imposing definite suspension upon finding attorney misappropriated funds). Respondent shall file an affidavit with the Clerk of Court, within ten (10) days of service of this opinion, showing that he has complied with Paragraph 30 of Rule 413, SCACR.

Definite suspension.