485 S.E.2d 376

**In the Matter of F. Mikell HARPER, Respondent.**

**No. 24618.**

Supreme Court of South Carolina.

Heard Feb. 18, 1997.

Decided May 12, 1997.

Barry L. Johnson, of Hilton Head Island, and Desa Ballard, of Ness, Motley, Loadholt, Richardson & Poole, P.A., Charleston, for Respondent.

Charles Molony Condon, Attorney General, and J. Emory Smith, Jr., Assistant Deputy Attorney General, Columbia, for Complainant.

PER CURIAM.

In this attorney grievance matter, we impose on F. Mikell Harper ("Attorney") a definite suspension from the practice of law for a period of sixty days.

*Daniel Frazier Matter*

In December 1986, Daniel Frazier deeded certain real property to Attorney, who had previously represented him in several transactions. There is conflicting evidence in the record whether this was at the request of Frazier or Attorney. Frazier testified that he was asked by Attorney to deed the property because Attorney was short on cash and wanted to obtain a loan on the property. Frazier's expectations were that Attorney would use the property as collateral to obtain a loan, retain a portion of the proceeds for himself, and remit the balance of the loan proceeds to Frazier. He understood that Attorney was going to use the property as collateral until he paid off the loan, and then deed the property back to Frazier. Attorney obtained a $35,000 loan. According to Frazier, Attorney retained $25,000 of the loan proceeds and remitted $10,000 to him.

According to Attorney, Frazier was in need of money and deeded the property so that Attorney could obtain a loan for Frazier. Attorney testified that of the $35,000 loan, Frazier got $20,000, and Attorney got $15,000. Attorney characterizes his retention of $15,000 of the loan proceeds as an "innovative" fee arrangement. The $15,000 attorney retained was to serve as a "credit" for legal work he was going to perform for Frazier.

Certain facts are undisputed. No written document exists memorializing this transaction. Attorney did not advise Frazier to seek advice of independent counsel concerning the transaction. In conveying the property, Frazier signed a blank deed. Both Frazier and Attorney agree that the loan amount on the property was $35,000, but the consideration cited in the deed conveying the property to Attorney was $50,000, not $35,000. Attorney does not have copies of the checks evidencing the disbursement of the loan proceeds. The $15,000 that Attorney claims was to serve as a credit for future legal services did not appear on any pre-billing invoice. The property has not been reconveyed to Frazier. After Frazier conveyed the property to Attorney, Attorney conveyed the property for a consideration of $10, without Frazier's permission, to Atlantis Title, a corporation owned by Attorney. A one-half interest in the property was then conveyed by

Attorney's title corporation to a third party for consideration of $10 and assumption of one-half of the existing mortgage balance.

In 1987–88, Attorney worked on closing a $500,000 loan for Frazier. As part of the proceeds from the loan, $35,000 was paid to Atlantis, $15,000 of which would, according to Attorney, serve as another credit for attorneys' fees, and $20,000 of which would be used toward the mortgage on the property Frazier conveyed to Attorney. An addendum to the HUD–1 Settlement Statement reflects, as part of the disbursement of the proceeds of the $500,000 loan, a payment of $65,823 to Farmco, which had foreclosed on a previous loan to Frazier. This dispute with Farmco was actually settled for $30,000. The difference of $35,823 was paid to Attorney. However, these attorneys' fees are not indicated on the HUD–1 Settlement Statement. Attorney testified that these were handled outside the loan transaction. At a later point, Attorney refunded Frazier $15,823 in attorneys' fees.

## HUD Matter

Attorney had contracted with the United States Department of Housing and Urban Development to provide sales closing services. Attorney's contract was terminated by HUD after an audit by the Inspector General. The audit report concluded that Attorney did not fully meet contract objectives or adequately control the HUD escrow account.

A representative of the Inspector General's office found that work records were not kept in an appropriate manner, but that there was no substantial difference in the attorneys' fees that Attorney took out and those to which he was entitled. The amount which HUD contends Attorney owes it is $3,514. HUD is holding back the sum of $2,305 in attorneys' fees, so the difference allegedly owed to HUD is $1,209.

## Disciplinary Proceedings

In April 1994, a complaint alleging misconduct with respect to the above matters was filed against Attorney. Attorney denied any wrongdoing as to the Frazier matter, contending that it was a fee dispute. Attorney similarly denied wrongdoing as to the HUD matter. After a hearing, the Panel Report

was issued which concluded that Attorney had violated the following rules in relation to the Frazier matter: Disciplinary Rule 5–104(A) (not entering into a business transaction with a client if lawyer and client have differing interests and if client expects the lawyer to exercise his professional judgment therein for protection of the client, unless the client has consented after full disclosure); Rule 9–102(B)(3) (lawyer shall maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them); Rule 9–102(B)(4) (lawyer shall promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive); and Rule 7–101(A) (lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available means permitted by law).

In relation to the HUD matter, the Panel concluded that Attorney had violated Rule 1.15(b) (lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property); and Rule 1.4(a) (lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information).

The Panel recommended a public reprimand as to both the Frazier and the HUD matters. The Executive Committee unanimously adopted the Panel's findings of fact and conclusions of law. By a vote of 6 to 1, the Committee recommended that Attorney receive a public reprimand; the dissenting member voted for a thirty-day suspension.

The parties have stipulated that the Daniel Frazier matter is governed by the S.C. Code of Professional Responsibility, and the HUD matter is governed by the S.C. Rules of Professional Conduct. *See* Rule 407, SCACR (S.C. Rules of Professional Conduct effective September 1, 1990). Before this Court, Attorney argues that the Panel and Executive Committee erred in finding misconduct with respect to the Frazier and HUD matters. In regard to the Frazier matter, Attorney argues that the transaction which occurred between

Frazier and Attorney was simply an "innovative" fee arrangement, not a business transaction. He asserts that under Rule 32 of the Code of Professional Responsibility, he was not required to have a written fee agreement. He also argues he was not required to advise Frazier to seek independent counsel. We disagree.

■ Even if we accept Attorney's version of the facts, we find misconduct. In his brief before this Court, Attorney states that the plan was for Attorney to mortgage the property, borrowing funds to be divided between himself and Frazier. Attorney's portion of the loan would be used for attorneys' fees. The rest would be paid to Frazier for continuation of his commercial transactions. This description alone demonstrates that the transaction was not simply a fee arrangement because it required Frazier to transfer the property in exchange for certain funds he would receive. Regardless of whether an additional portion of the funds generated through this transaction went toward attorneys' fees, the underlying transaction was a business transaction. Accordingly, unless the client had consented after full disclosure—and evidence of this has not been offered—then Attorney should not have entered into this transaction. *See* Disciplinary Rule 5–104(A).

In his brief, Attorney states that there was no agreement between the parties as to if, when, and how the property would be conveyed back to Frazier. There was also no agreement restricting the transfer of the property. The fact that Frazier asserts that the property should have been reconveyed to him and that transfers occurred without his permission establishes that Attorney and Frazier had conflicting interests which only could have been addressed through a written agreement. It should be noted that Attorney was fully aware of the utility of written agreements and even testified that he had previously used at least one such agreement with Frazier.

■ The scope of misconduct, however, extends beyond the issue of business transactions. There are a number of specific incidents that evidence either failure to maintain complete records, failure to promptly pay as requested by a client funds he is entitled to receive, or failure to seek the lawful objectives of the client:

(1) Attorney and Frazier present differing accounts as to how much money Frazier actually received. Attorney contends Frazier got $20,000; Frazier states he received $10,000. Attorney has no record of the checks he made out to Frazier.

(2) The deed transferring Frazier's property states a consideration of $50,000, but this amount is not consistent with the $35,000 "exchanged."

(3) Attorney states that $15,000 was advanced by Frazier as a credit for work to be performed by Attorney. There is no indication of such a "credit" on pre-billing invoices.

(4) An addendum to the HUD–1 Settlement Statement reflects payment of $65,823 to Farmco, which had foreclosed on a loan of Frazier's. This dispute was actually settled for $30,000. The difference of $35,823 was paid to Attorney. These attorneys' fees were not indicated on the HUD–1 Settlement Statement.

Based on these facts in the record, we hold there is clear and convincing evidence supporting the findings of violations of Disciplinary Rule 5–104(A); Rule 9–102(B)(3); Rule 9–102(B)(4); and Rule 7–101(A), with respect to the Frazier matter.

■ Although the recommendations of the Panel and the Board are persuasive, the ultimate authority to discipline attorneys and the manner of discipline rests with this Court. *In re Dobson,* 310 S.C. 422, 427 S.E.2d 166 (1993). We have imposed a public reprimand in those cases where the attorney's misconduct consisted solely of negligent recordkeeping, that is, where no misappropriation was found. *See, e.g., In re Nida,* 297 S.C. 541, 377 S.E.2d 580 (1989). However, the facts of the present case constitute much more than negligent recordkeeping.

■ The case of *In re Bowen,* 321 S.C. 450, 469 S.E.2d 46 (1996) is instructive. In *In re Bowen,* the attorney was a named person on the client's bank account. Client received a monthly distribution from a life trust into his bank account. The attorney paid client's living expenses out of this account. During a five year period, the attorney wrote checks totalling some $168,000 to his law firm and his credit card companies. Although Bowen claimed that these checks were written to

cover legal fees and expenses and to repay firm advances, he could provide billing statements for only $85,000 of the total amount. He did not have a written fee agreement, and his recordkeeping was very poor. Given Bowen's fiduciary relationship with his client, particularly one who had limited capacity, we imposed a six month definite suspension upon him. Under the facts of the present case, we conclude that a definite suspension for sixty days is warranted for Attorney's actions in relation to the Frazier matter.

■ In view of the trust placed in attorneys by their clients and attorneys' often superior expertise in complicated financial matters, attorneys must take every possible precaution to ensure that clients are fully aware of the risks inherent in a proposed transaction and of the need for independent and objective advice. *In re Conway,* 305 S.C. 388, 409 S.E.2d 357 (1991). We have in the past warned of the dangers of lawyers entering into business transactions with clients, if they have different interests in the deal, without making full disclosure. *See In re Pyatt,* 280 S.C. 302, 312 S.E.2d 553 (1984). Attorney's conduct in the Frazier matter is illustrative of those dangers.

As to the HUD matter, over the course of his contract, Attorney carried out some 1500 closings for HUD, involving 50 to 100 million dollars. In its audit, HUD reviewed some six or seven hundred transactions over a period of a number of months. The amount in dispute, approximately $1,200, in comparison to the volume of transactions and sums of money involved, is relatively negligible. Thus, although there is evidence that Attorney's bookkeeping was less than optimal, there is not evidence that he engaged in misconduct, as in the Frazier matter. Accordingly, we dismiss the complaint as to the HUD matter.

Attorney shall file, within fifteen (15) days of this opinion, an affidavit with the clerk of this Court stating he has complied with Paragraph 30 of Rule 413, SCACR.

**DEFINITE SUSPENSION.**