490 S.E.2d 1

**In the Matter of John T. McMILLAN, Respondent.**

No. 24659.

Supreme Court of South Carolina.

Heard May 20, 1997.
Decided July 28, 1997.

Desa Ballard, of Ness, Motley, Loadholt, Richardson & Poole, P.A., Charleston, for Respondent.

Attorney General Charles Molony Condon, and Senior Assistant Attorney General James G. Bogle, Jr., Columbia, for Complainants.

PER CURIAM:

In this attorney disciplinary proceeding, Respondent John T. McMillan is accused of multiple acts of misconduct involving, among other things, the use of client trust funds and client settlement proceeds. We find that Respondent has committed serious misconduct, and, accordingly, we disbar him from the practice of law.

## PROCEEDINGS

The original complaint in this action was filed with the Board on March 28, 1994. That complaint alleged misconduct regarding the Hicks matter and regarding McMillan's use of his trust accounts. In his answer, McMillan admitted some of the factual allegations of the complaint, but denied committing misconduct.

An amended complaint dated February 22, 1995 essentially restated the allegations of misconduct concerning the Hicks matter and the trust accounts. However, the amended complaint also alleged McMillan committed misconduct in his use of certain disputed attorneys fees (Allison matter) and in his failure to cooperate with the Board. In his amended answer, McMillan admitted spending the disputed attorneys fees in the Allison matter, but claimed he had earned the money. He

admitted his reply to the investigator for the Board was untimely.

A full hearing in these matters was held on January 18, January 19, and February 23, 1996. Respondent McMillan was represented by counsel. Following the hearing and briefing of the issues by the parties, the Panel issued its report finding misconduct in all four matters alleged by the State. The Hearing Panel ("Panel") recommended disbarment for three instances of misconduct (Hicks matter, Trust Account matter, and Allison matter) and a public reprimand for the fourth instance (failure to cooperate with the Board). The Interim Review Committee [1] ("Committee") of the Board of Commissioners on Grievances and Discipline agreed with the Panel's findings of fact and conclusions of law, but recommended disbarment as a single sanction.

McMillan did not file with this Court any exceptions to the findings of fact and conclusions of law by the Panel and the Committee, but requested to be heard in mitigation. At oral argument before this Court, McMillan admitted committing serious misconduct and stated he consented to disbarment.

## DISCIPLINARY VIOLATIONS

We agree with the Panel and Committee's findings of fact and conclusions of law. We find McMillan has committed misconduct as described below.

## HICKS MATTER

Sandra Hicks was a longtime friend of McMillan's and retained him to represent her in a personal injury action. Although McMillan did not provide any written fee agreement,

---

1. The order adopting the new Rules for Lawyer Disciplinary Enforcement provided that any disciplinary case in which a hearing had been held by a hearing panel prior to January 1, 1997, would continue to conclusion under the former Rule on Disciplinary Procedure. The Interim Review Committee was created to fulfill the functions performed by the Executive Committee under Paragraph 14(a) of the former Rule on Disciplinary Procedure in those cases. Because the hearing by the Hearing Panel was held in this case prior to January 1, 1997 and was, therefore, heard under the former Rule on Disciplinary Procedure, the Interim Review Committee reviewed the Panel's findings.

testimony before the Panel established that he and Hicks had agreed that McMillan's fee would be one-third of any recovery he secured for her.

The final settlement offer was $22,000, and McMillan agreed to increase the amount by $1,000 so that Hicks would get a larger share of the settlement. After McMillan received the settlement proceeds, he put the money, less his fee and certain medical bills, in his office escrow account. He then proceeded to use Hicks' settlement proceeds for other purposes, including his own personal expenses.

There was testimony that Hicks had said she wanted McMillan to "invest" her recovery. McMillan told her he had a half interest in a house [2] in West Columbia, he was planning to sell the house, and the house might be a good investment for Hicks. McMillan told Hicks she could invest in the West Columbia house and keep half the sales proceeds. If that amount turned out to be less than the settlement amount to which Hicks was entitled, McMillan would "protect" her by making up the difference. McMillan did not advise Hicks she could consult independent counsel about her potential investment in the West Columbia house.

McMillan never transferred to Hicks his deed to the West Columbia house. In fact, he did not execute any documents to protect Hicks' interest in the settlement proceeds, nor did Hicks sign any document authorizing her funds to be invested in such a way. Furthermore, the West Columbia house was in disrepair and was subject to tax liens. There was testimony that, after liens and other expenses, half the proceeds from the sale of the house would not equal Hicks' net recovery from the lawsuit.

Hicks eventually consulted Ann Furr, a local attorney, concerning the use of the settlement proceeds. She learned that the co-owner of the West Columbia property was unaware of any interest she had in the property and that McMillan had never transferred his title in the property to

---

**2.** Harold Swafford also held a half-interest in the house. Swafford testified he knew nothing about any transfer of McMillan's interest in the property.

Hicks. Hicks subsequently filed suit against McMillan for legal malpractice. The lawsuit settled for $15,000.[3]

These actions all occurred prior to the effective date of South Carolina's Rules of Professional Conduct, so the Code of Professional Conduct governs the Hicks matter. The Panel and Committee found McMillan's conduct in the Hicks matter violated the following disciplinary rules: former Disciplinary Rule 5–101(A), which forbids an attorney from placing his own personal finances in a position of conflict with a client's; former Disciplinary Rule 5–104, which forbids an attorney from entering into a business transaction with a client without full disclosure and consent by the client; and former Disciplinary Rule 1–102, which forbids conduct adversely reflecting on the attorney's fitness to practice law as well as conduct tending to bring the courts and the legal profession into disrepute. We agree with these findings.

## TRUST ACCOUNT MATTER

McMillan's trust account records were entered into evidence at the Panel Hearing. The records themselves show that from the years 1989 through 1993 McMillan used trust funds for both personal expenses and law firm operating expenses.[4] The trust account record reflects that several checks were returned for insufficient funds. Finally, in 1992, the IRS levied against two of McMillan's trust accounts.

Based on the evidence regarding McMillan's use of his trust account funds, the Panel and Committee concluded McMillan violated former Disciplinary Rule 9–102(A), which proscribes a lawyer's use of client funds, and current Rule 1.15 of Rule 407, SCACR, which requires lawyers to hold client property separately from their own property. Specifically, the Panel noted that "At best, the Respondent co-mingled funds that were due

---

3. Additionally, however, the Record contains evidence that McMillan attempted to return to Hicks at least some portion of the proceeds from the personal injury action and that, ultimately, Hicks accepted a check for more than $8,000 (in addition to the $15,000 settlement).

4. McMillan testified at the Panel hearing that he became aware of the impropriety in his use of trust funds and remedied his own practice after 1990. Although the trust account records show that McMillan's personal and business use of trust funds was far more commonplace before 1990, such use continued in the succeeding years.

him as attorney's fees with funds due his clients. In many instances, however, the records show that Respondent used his client's funds for his personal use." We agree with the Panel and Committee's findings of misconduct in this matter.

## ALLISON MATTER

McMillan represented Margaret Allison in a divorce action against her husband, a lieutenant colonel in the Air Force. Some time after the divorce was final, Allison's husband died and Allison received $200,000 in life insurance. McMillan persuaded her to place the $200,000 in a trust account under his control at Lexington State Bank.

Almost immediately after she was persuaded by McMillan to enter the trust arrangement, Allison became uncomfortable with McMillan's control and consulted Bob Wood, a Columbia attorney. Wood contacted McMillan, and McMillan released $192,968 to Allison. By agreement, he kept approximately $7,800 of the life insurance proceeds in his trust account. The $7,800 represented disputed attorneys fees.

McMillan proceeded to spend much of the $7,800 before the fee dispute was resolved without informing Wood or Bob Thomas, one of Wood's law partners who was also working on the case. Only after Thomas demanded evidence that the disputed funds remained in a special trust account did McMillan admit he had spent much of the $7,800.

All this conduct occurred after the effective date of South Carolina's Rules of Professional Conduct, so those rules govern as to this misconduct. The Panel and Committee found McMillan violated Rule 1.15, which requires attorneys to segregate their own funds from client funds. Additionally, the Panel and Committee found McMillan's several acts of misconduct violated Rule 8.4, which forbids, among other things, conduct that is prejudicial to the administration of justice. The Record supports the Panel and Committee's findings of misconduct in this matter.

Finally, McMillan failed to respond to initial Board inquiries into the Allison matter. Such a failure to respond is itself misconduct. *See In re Treacy,* 277 S.C. 514, 290 S.E.2d 240 (1982).

## SANCTION

This Court has never regarded financial misconduct lightly, particularly when such misconduct concerns expenditure of client funds or other improper use of trust funds. For example, in *In re Alexander*, 322 S.C. 439, 472 S.E.2d 616 (1996), this Court imposed a two-year suspension upon a lawyer who, among other violations, made personal use of money in his trust fund, notwithstanding the fact no clients were injured by this misconduct. *See also In re Thompson*, 316 S.C. 557, 451 S.E.2d 380 (1994) (disbarring attorney for misappropriating and failing to safely maintain client funds); *In re Edwards*, 323 S.C. 3, 448 S.E.2d 547 (1994) (disbarring attorney for misappropriation of client funds and failure to maintain the integrity of client funds); *In re Shelley*, 305 S.C. 180, 407 S.E.2d 626 (1991) (suspending attorney for one year for using trust account funds for personal and business expenses); *In re Coleman*, 302 S.C. 258, 395 S.E.2d 175 (1990) (disbarring attorney for misappropriation of client funds and failure to properly administer trust account). The Court has also disciplined attorneys for improper business dealings with clients. *See, e.g., In re Harper*, 326 S.C. 186, 485 S.E.2d 376 (1997) (suspending attorney for, among other things, entering business transaction with client without obtaining client's consent after full disclosure).

Respondent McMillan has committed serious misconduct demonstrating a disregard for his responsibilities to his clients and to his profession. Under these circumstances, disbarment is the only appropriate sanction. Accordingly, we disbar Respondent McMillan from the practice of law. McMillan shall file, within fifteen (15) days of this opinion, an affidavit with the clerk of this Court stating he has complied with Paragraph 30 of Rule 413, SCACR.