573 S.E.2d 776

**In the Matter of Hal J. WARLICK, Respondent.**

**No. 25556.**

Supreme Court of South Carolina.

Heard Sept. 18, 2002.
Decided Nov. 12, 2002.
Rehearing Denied Dec. 17, 2002.

Attorney General Charles M. Condon, Senior Assistant Attorney General James G. Bogle, Jr., and Henry B. Richardson, Jr., Disciplinary Counsel, all of Columbia, for the Office of Disciplinary Counsel.

Hal J. Warlick, of Georgetown, pro se.

PER CURIAM:

In this attorney disciplinary matter, the Commission on Lawyer Conduct filed formal charges against respondent,[1] regarding numerous matters of misconduct.[2] We agree with the Panel's recommendation that respondent be disbarred from the practice of law.

[1]. Respondent was placed on interim suspension on February 5, 1999. *In re Warlick,* 334 S.C. 243, 513 S.E.2d 352 (1999). Previously, respondent was indefinitely suspended from the practice of law based on his conviction of contempt in federal court. *In re Warlick,* 287 S.C. 380, 339 S.E.2d 110 (1986). *See also United States v. Warlick,* 742 F.2d 113 (4th Cir.1984). He was later readmitted. *In re Warlick,* 296 S.C. 350, 372 S.E.2d 910 (1988).

[2]. Upon motion of the prosecutor, three matters were dismissed for lack of evidence. After the hearing, the Subpanel dismissed four matters and portions of five different matters for lack of evidence.

## FACTS

### Account Matters

In many of the Formal Charges, respondent has admitted that he failed to maintain a proper trust account and that he commingled personal funds with client funds and other funds in his possession. The records of respondent's Greenville National Bank Special Account[3] show the account had a negative balance on at least six occasions. Throughout the time period covered in these charges, the Subpanel found that respondent continuously violated Rule 1.15, of Rule 407, SCACR, regarding the safekeeping of property. In seventeen separate matters, respondent violated Rule 1.15 and Rule 8 .4, of Rule 407, SCACR, regarding attorney misconduct.[4]

### Mildred Burgess Matter

Respondent settled Mildred Burgess's case for $18,000. He prepared a settlement sheet that showed a receipt of $18,000, deductions for attorney's fees of $4,500 and other expenses, and a net to the client of $12,328.50. On the settlement sheet, respondent offered his client three options as to how she would receive the money.

After some discussion, Burgess elected to take a different option of receiving a portion of the settlement immediately and $11,000 via a post-dated check. Burgess testified she believed she was loaning money to respondent that would be repaid at ten percent interest. Respondent testified he did not advise Burgess of her right to seek independent counsel regarding the loan transaction. Respondent issued a counter check to Burgess drawn on his Greenville National Bank Special Account. Burgess negotiated the check. Respondent also gave her a post-dated check, drawn on the same account;

---

3. Respondent used the Special Account for a variety of purposes, including the processing of client funds, bills, family expenses, and the payment of operating expenses. The account was not a trust account. The Special Account was opened with funds received from a client, Ernest Galloway (see Ernest and Edna Galloway Matter *infra*), through an initial deposit on September 23, 1998, of $94,625.11. This account dropped to a negative balance on November 4, 1998.

4. In ten matters, respondent's only rule violations were Rules 1.15 and 8.4.

however, Burgess was unable to negotiate this check because respondent's accounts were frozen.

The Subpanel found respondent did not maintain his client's funds in a trust account and commingled the funds with other funds. The Subpanel found respondent entered into a business transaction with Burgess, the terms of which were not fair and reasonable to the client and were not fully disclosed and transmitted in writing in a manner that the client could reasonably understand. Further, respondent failed to give his client a reasonable opportunity to seek the advice of independent counsel regarding this transaction.

The Subpanel concluded that respondent had violated the following rules of Rule 407, SCACR: Rule 1.4 (communication), Rule 1.5 (fees), Rule 1.8 (prohibited transactions), Rule 1.15 (safekeeping property), Rule 2.1 (advisor), and Rule 8.4 (misconduct).

### Fred Howard Matter

Respondent represented Fred Howard in a workers' compensation matter. During the course of representation, Howard received payments, routed through respondent's office, from an insurance company.

In October 1998, the insurance company issued a check in the amount of $6,101.21 payable to Howard. Respondent allegedly forged his client's name to the check. SLED Agent Joyce A. Lauterbach testified that, in her expert opinion, respondent "probably wrote" Howard's name to the check. In determining whether a signature was written by the actual person, the highest degree of certainty is identification, the second is highly probably, the third probable, the fourth is indications, and the fifth is no conclusion. Therefore, the possibility respondent forged Howard's name was in the median range.

Respondent testified he saw Howard at a gas station and happened to have his checks with him. Respondent gave a $265 check and the $6,101 check to Howard to sign. He told Howard he needed the check for the larger amount back because his attorney's fee had not been paid out of the settlement yet. Respondent left the checks with Howard while he paid for his gas, and, therefore, did not see Howard

sign the check. He retrieved the check that had already been placed back in its envelope from Howard, who indicated respondent could mail the balance from the check to him later. Respondent stated he did not forge Howard's name to the check.

The Subpanel found that Howard did not endorse the check. However, the Subpanel found the evidence was not clear and convincing that respondent signed Howard's name to the check or caused another to do so.[5] The Subpanel found the check was deposited into respondent's Special Account, which was not a proper trust account and was commingled with respondent's funds and others. By November 4th, that account had a negative balance and no intervening disbursements had been made to Howard.

The Subpanel concluded that respondent had violated the following rules of Rule 407, SCACR: Rule 1.1 (competence),[6] Rule 1.3 (diligence), Rule 1.4 (communication), Rule 1.5 (fees), Rule 1.15 (safekeeping property), and Rule 8.4 (misconduct).

### Ernest and Edna Galloway Matter

Ernest Galloway was 89 years old at the time this matter arose.[7] He maintained an investment account, through MFS/ Sun Life of Canada (hereinafter referred to as Sun Life), in his wife's name with a balance of approximately $100,000.

The Galloways consulted respondent concerning their unhappiness with the amount of income they were receiving from their investment. Respondent suggested he could borrow their funds and pay them $800 per month in interest. As a result, the Galloways cashed in the Sun Life account and delivered a $94,625.11 check to respondent. The Galloways incurred a Sun Life surrender charge of $5,067.33.

---

5. Following the hearing, respondent was tried and acquitted of forgery.

6. We disagree with the Subpanel's finding that respondent violated Rule 1.1, which states "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for representation." Nowhere was it alleged or proven that respondent did not provide Howard competent representation in his workers' compensation case.

7. Mr. Galloway passed away on June 26, 1999.

Respondent executed a handwritten document acknowledging receipt of the check, and promising to return the principal plus 10.2% interest payable monthly at the rate of $800 per month. Respondent indicated he entered into the agreement, which he acknowledged was an extremely unwise thing to do, in an effort to alleviate some of his financial problems.

The Subpanel found respondent entered into a business transaction with his client.[8] The Subpanel found the terms on which respondent acquired his interest were not fair and reasonable to the client, and were not fully disclosed and transmitted in writing in a manner in which the client could understand. Further, respondent failed to give his client a reasonable opportunity to seek the advice of independent counsel regarding the transaction.

Respondent used the Galloways' check to open his Warlick Law Office Special Account at Greenville National Bank on September 23, 1998. After depositing those funds, the balance never again rose above the amount of the check. By October 1, 1998, the Special Account balance dropped to about $7,000. From September 23rd through October 1st, no funds were issued from that account to the Galloways.

Respondent paid what he described as "loan payments" to the Galloways, in the initial amount of $400 and two subsequent $800 payments, all in cash. Thereafter, he made five payments, two of which were drawn from the Special Account, one drawn on an operating account at BB & T, one drawn on respondent's wife's account, and one drawn on respondent's mother's account.

When the Galloways learned respondent had been placed on interim suspension, they expressed concerns to respondent about the loan. Respondent delivered a mortgage on property owned by him in Pickens County to the Galloways. Respondent did not record this mortgage and it had not been recorded as of March 25, 1999. At that time, there were three other mortgages on record against the same property. This property was eventually foreclosed upon and the Galloways did not receive any money from that sale.

---

8. Respondent's office had represented Mr. Galloway in the past.

In an effort to assure the Galloways their money would be repaid, respondent also delivered to them an Assignment, dated March 9, 1999. In this document, respondent transferred to the Galloways his anticipated fees from a workers compensation case, *Stanley Dockins v. English Homes.*

The Subpanel concluded that respondent had violated the following rules of Rule 407, SCACR: Rule 1.4 (communication), Rule 1.8 (prohibited transactions), Rule 1.15 (safekeeping property), Rule 2.1 (advisor), and Rule 8.4 (misconduct).

### Kathleen Kimbrough Matter

Kathleen Kimbrough came to respondent on February 6, 1999, the day after he had been placed on interim suspension, about an urgent family court matter. Respondent informed Kimbrough "we'll need a retainer." Kimbrough paid $100 to be applied towards her legal fee. Respondent admitted he did not advise her he had been placed on interim suspension. He left the $100 he received from her for an associate with notes concerning the problem.

The Subpanel found respondent had engaged in the unauthorized practice of law in violation of Rule 5.5 of Rule 407, SCACR. The Subpanel also found he had violated Rule 8.4 of Rule 407, SCACR.

### Shirley Weaver Matter

Respondent represented Grady Gillespie on a criminal matter. Respondent was paid $3,500 in legal fees.

Grady Gillespie's brother-in-law, Cecil A. Weaver, Jr., came to respondent's office on February 6, 1999, without an appointment, while respondent was clearing out his office after being informed of his interim suspension on February 5th. Weaver left some court documents with respondent that Gillespie had received. One document involved the signing up for a drug, alcohol abuse, and sexual predator program, and the other document indicated Gillespie should appear in court on February 24, 1999. Regarding the rehabilitation program, Weaver testified respondent told him Gillespie should show cooperation and attend it. As for the court hearing, Weaver testified respondent stated he would be at the hearing. He further

stated that respondent did not tell him he had been suspended from the practice of law.

Respondent acknowledged receiving the documents and testified he told Weaver that someone would meet Gillespie at a court hearing. Respondent testified that he then left the documents for an associate. Respondent admitted he did not inform Weaver that he had been placed on interim suspension.

The Subpanel found respondent had engaged in the practice of law after being suspended. The Subpanel concluded that respondent had violated the following rules of Rule 407, SCACR: Rule 5.5 (unauthorized practice of law) and Rule 8.4 (misconduct).

### Brenda Gail Alexander Matter

Brenda Alexander and her husband retained respondent to sue the Toyota Company because of a problem with their truck. Respondent prepared a settlement statement, showing a settlement of $25,000, less attorney's fees, and also showing a deduction for a State Farm lien.

When the Alexanders retrieved their client file after respondent's suspension, they discovered a $5,000 check from respondent to State Farm. As a result, there remained $7,500 due them from their settlement.

The Subpanel found respondent failed to return the $7,500 to the Alexanders and failed to make an accounting to the Alexanders as to how the $7,500 was applied. Respondent testified the $7,500 which he did not return to the Alexanders was kept by him as a retainer on another case which he was handling for Mrs. Alexander. The Subpanel found there was no documentation to substantiate respondent's testimony.

The Subpanel found respondent failed to maintain the Alexanders' settlement check in a proper trust account and commingled the funds with his own funds and the funds of others. Respondent admitted he did not maintain a proper trust account. The Subpanel concluded that respondent had violated the following rules of Rule 407, SCACR: Rule 1.4 (communications), Rule 1.5 (fees), Rule 1.15 (safekeeping property), and Rule 8.4 (misconduct).

## Laazora Hutchins Matter

Respondent represented Clyde and Laazora Hutchins in a civil action, filed November 20, 1998, in the Pickens County Court of Common Pleas. The allegations were that the defendants had agreed to sell real estate to the Hutchins, that the Hutchins had placed a deposit of $250 on the sale, and the defendants had failed to complete the sale. The purchase price for the real estate was $15,000.

Prior to filing suit, respondent requested $14,750 from Mrs. Hutchins, promising to use those funds to complete the real estate transaction within a short time. On September 8, 1998, Mrs. Hutchins provided a cashier's check to respondent in the amount of $14,750. When no action was taken, Mrs. Hutchins spoke with respondent. In response, he gave her a signed written document, dated October 17, 1998, acknowledging receipt of the money, which he was holding pursuant to the pending suit. Respondent represented to Mrs. Hutchins that the $14,750 was earning interest for her at the annual rate of seven percent and would be used for the purchase of the real estate or returned to her within sixty days. The funds were not returned within sixty days.

Respondent provided a check, drawn on his wife's BB & T bank account and dated February 20, 1999, to Mrs. Hutchins in the amount of $15,750. He represented to Mrs. Hutchins that the check represented her original $14,750 plus $1,000 "interest." This check was returned for insufficient funds and Mrs. Hutchins' personal bank account was debited and resulted in her incurring a service charge.

The Subpanel found the funds that respondent attempted to deliver to Mrs. Hutchins were not her funds. Further, the Subpanel found respondent did not engage in the unauthorized practice of law by attempting to make restitution to Hutchins by delivering a check to her on February 20, 1999. However, the Subpanel concluded respondent violated the following rules of Rule 407, SCACR: Rule 1.1 (competence), Rule 1.15 (safekeeping property), and Rule 8.4 (misconduct).

## Robert E. Belt Matter

Robert Belt and his wife operated a plumbing company. ProSource, Inc., a plumbing supply house, received a judg-

ment against the Belts for about $21,000. The Belts hired respondent to attempt to reduce the judgment so that it could be paid. Respondent informed the Belts he had negotiated the judgment down to $12,000.

The Belts paid respondent $12,000 to be given to ProSource to satisfy the judgment. The money was delivered by a $2,000 check, a $8,000 check, and by $2,000 cash by August 31, 1998. Respondent did not conclude the Belt matter with the adverse party prior to his interim suspension. A review of respondent's BB & T bank statements and Greenville National Bank statements showed that respondent had not deposited the Belts' money in either of those accounts. The Subpanel found respondent did not maintain the $12,000 in a proper trust account and commingled the funds with his own funds and that of others.

The Subpanel concluded that respondent had violated the following rules of Rule 407, SCACR: Rule 1.3 (communication), Rule 1.15 (safekeeping property), and Rule 8.4(a)—(e) (misconduct).

### Eric V. Yule Matter

The Yules hired respondent to represent them in a motor vehicle accident case. Mrs. Yule sought counseling as a result of the accident. The counselor recommended Mrs. Yule keep a journal of her activities and details relating to the accident and the effect it had on her.

When Mrs. Yule was deposed, respondent and defense counsel learned of her journal. It was agreed during the deposition that a copy of the journal would be provided to defense counsel. Respondent did not read Mrs. Yule's journal prior to turning it over to defense counsel. He testified he did not realize there was sensitive material in the journal and that Mrs. Yule did not forbid him to turn over the original journal.

The Subpanel noted it had been contended the journal contained personal information, unrelated to the accident, which should not have been disclosed to defense counsel. It was further contended that Mrs. Yule did not want the original journal turned over. However, after reviewing the evidence presented and Mr. Yule's testimony, the Subpanel concluded that both Mr. and Mrs. Yule understood, or were at

least aware, that a copy of the entire journal would be disclosed to opposing counsel.

The Subpanel found insufficient evidence to conclude respondent committed misconduct regarding the journal or that he made false representations to his client about possible settlement offers. Therefore, the Subpanel recommended the merits of this matter be dismissed. However, the Subpanel found respondent failed to reply to two inquiry letters from the Commission on Lawyer Conduct regarding this matter in violation of Rule 8.1(b) of Rule 407, SCACR.

### Suzanne Amos Glymph Matter

During the time this matter arose, Brian K. James was an attorney working out of respondent's office. James represented Suzanne Amos Glymph in a workers' compensation case. The case was settled on November 1, 1998, for $16,500. After attorney's fees, the balance due to Glymph was $12,238.25. Respondent deposited the settlement check into the Special Account on November 16, 1998.

After the deposit of Glymph's funds, the balance in the account dropped to $322 by November 30th. No disbursement was made to Glymph in the intervening time. As admitted by respondent, the Subpanel found he failed to maintain the settlement funds in a proper trust account and commingled the funds with his own funds and that of others.

On December 4, 1998, respondent wrote a check from the Special Account, payable to Glymph, in the amount of $12,380.25, representing the proceeds from her settlement. The source of those funds, however, was not from her funds.

The Subpanel noted it was alleged that respondent forged Glymph's and Brian James's signatures to the settlement check. Agent Joyce A. Lauterbach testified that she was unable to reach a conclusion as to whether respondent forged Brian James's signature; however, she concluded that respondent "probably wrote the ... Glymph signature." Brian James testified he did not sign the back of Glymph's settlement check and that he did not give respondent permission to do so. Glymph testified she never saw nor signed the original settlement check, and that she did not authorize anyone to sign her name to the check.

The Subpanel stated that, after careful consideration of the expert testimony presented by Agent Lauterbach, it was unable to conclude by clear and convincing evidence that respondent committed forgery. However, the Subpanel concluded respondent had violated the following rules of Rule 407, SCACR: Rule 1.15 (safekeeping property) and Rule 8.4 (misconduct).

### Disciplinary Counsel Matter

Respondent drafted wills for two clients. In these wills, respondent designated himself as Personal Representative, without the necessity of securing a bond, and as Trustee. Respondent did not disclose any potential conflict of interest, nor did he seek any waiver from the clients regarding any potential conflict. The Subpanel found that respondent violated Rule 1.7 (conflict of interest).

The full Panel adopted the Subpanel's report.

## DISCUSSION

■ The Panel found, with regard to most of the matters, violations of Rule 8.4, misconduct. The Panel further found violations of the following: (1) Rule 1.1, competent representation (one violation); (2) Rule 1.3, diligence (two violations); (3) Rule 1.4, communication (four violations); (4) Rule 1.5, fees (three violations); (5) Rule 1.7, conflict of interest (one violation); (6) Rule 1.8, prohibited transactions (two violations); (7) Rule 1.15, safekeeping property (seventeen violations); (8) Rule 2.1, advisor (two violations); (9) Rule 5.5, unauthorized practice of law (two violations); and (10) Rule 8.1(b), failure to respond to a demand from a disciplinary authority (one violation). The Panel recommended disbarment.

Further, although the Panel did not so find, we find respondent has violated the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (violating Rules of Professional Conduct) and Rule 7(a)(5) (engaging in conduct tending to pollute administration of justice or to bring courts or legal profession into disrepute or conduct demonstrating unfitness to practice law).

■ In determining the appropriate punishment, we look to the punishment given to other attorneys for similar behav-

ior. *In re Larkin,* 336 S.C. 366, 520 S.E.2d 804 (1999). We do not regard financial misconduct lightly, particularly when such misconduct concerns expenditure of client funds or other improper use of trust funds. *In re McMillan,* 327 S.C. 98, 490 S.E.2d 1 (1997).

In light of respondent's egregious misconduct, we find the Panel correctly concluded he should be disbarred. The Court has deemed disbarment the appropriate sanction in similar cases involving financial misconduct. *See In re Thompson,* 343 S.C. 1, 539 S.E.2d 396 (2000) (disbarment for mishandling of trust account, commingling of funds, and use of trust accounts in check kiting scheme); *In re Miller,* 328 S.C. 283, 494 S.E.2d 120 (1997) (disbarment for repeated instances of misconduct regarding client funds); *In re McMillan, supra* (disbarment for using client trust funds and settlement proceeds for personal expenses and law firm operating expenses, and for failing to cooperate with disciplinary board); *In re Hendricks,* 319 S.C. 465, 462 S.E.2d 286 (1995) (disbarment for misappropriating funds, neglecting client matters, and practicing law while under suspension); *In re Bowers,* 303 S.C. 282, 400 S.E.2d 134 (1991) (disbarment for misappropriating funds to invest in future trading options). Here, respondent committed financial misconduct in several matters, practiced law while under suspension, and involved himself in financial transactions with his clients.

Consequently, we disbar respondent, effective as of the date of this opinion, and order him to pay the costs of the disciplinary proceedings. We also order respondent to make restitution to all injured parties, including clients and the Lawyers' Fund for Client Protection. The Office of Disciplinary Counsel shall determine the amount of restitution and implement a plan for restitution.[9] Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, of

**9.** In determining a restitution plan, the Office of Disciplinary Counsel shall give priority to Mrs. Burgess and Mrs. Galloway. Further, the amount owed Mrs. Galloway shall include the $5,067.33 surrender charge the Galloways incurred when the Sun Life account was cashed in.

162

Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.