22980

In The Matter of Marlene T. SIPES, Respondent.

(377 S. E. (2d) 574)

Supreme Court

*Atty. Gen. T. Travis Medlock* and *Asst. Attys. Gen. James G. Bogle, Jr.,* and *J. Emory Smith, Jr.,* Columbia, *for complainant.*

*Marlene T. Sipes,* Columbia, *pro se.*

Heard Oct. 4, 1988.

Decided March 6, 1989.

*Per Curiam:*

This is a disciplinary proceeding charging Marlene T. Snipes (Respondent) with conduct violating the following provisions of the Code of Professional Responsibility: 1) DR 1-102(A)(3)—proscribing illegal conduct involving moral turpitude and; 2) DR 1-102(A)(4)—proscribing conduct involving dishonesty, fraud, deceit or misrepresentation. Respondent Sipes is also charged with acts of misconduct as defined by the following provisions of the South Carolina Court Rules on Disciplinary Procedure: 1) Rule 5(B)—defining misconduct as an act in violation of the Oath of Office and Code of Professional Responsibility, whether or not

such occurred in the course of an attorney-client relationship and; 2) Rule 5(D), which further defines misconduct as that which tends to bring the legal profession into disrepute or demonstrates unfitness to practice law.

The Hearing Panel concluded that Respondent had engaged in conduct violating the above-cited code provisions and Rules of Court and recommended a public reprimand. The Executive Committee adopted the Panel's findings of fact and conclusions of law and independently recommended that Respondent be publicly reprimanded. We agree with the concurrent findings by the Hearing Panel and Executive Committee, but disagree with the recommendation. Therefore, we impose a suspension from the practice of law in this State for a period of one year.

The present charges grew out of Respondent's misappropriation of funds entrusted to her while serving as "Cookie Chairperson" of her daughter's Girl Scout Troop during their 1986 cookie sale. As chairperson, Respondent was to collect checks and cash from the cookie sales and deposit them into a bank account designated by the Girl Scout Council (Council). Respondent was provided with special deposit slips to use. Respondent deposited the checks, but instead of depositing the cash proceeds, she spent the money for her own personal and family expenses. Respondent contends that she used the money with the intention of writing one check from her personal account to pay the Council.

On March 18, 1986, when the sale money was due, Respondent deposited three personal checks in the Council account in the amounts of $183.75, $500.50 and $1,135.30. These checks were written on her husband's credit union account and were signed "William A. Sipes." Each of these checks was returned and marked "account closed." The account had shown a negative balance since February 14, 1986. In her answer to the complaint, Respondent admitted that she had no authorization from the credit union to sign these checks, but said she did have her husband's permission to sign his name. At the Panel hearing, however, Respondent admitted that she did *not* have her husband's consent to sign his name to the checks. At no time did Respondent have authority to write the checks.

On March 31, Council gave notice to Respondent about the check problem. Shortly thereafter Respondent paid $183.75 to the Council. Attached to the money order for the $183.75 was a note in which she told the Council there had been a "mix-up in deposits" and promised complete payment "within one week." The promised payment was never made. On May 7, 1986, Respondent left another note with the Council promising the "balance ... by Friday at the latest." On Friday, May 12, 1986, Respondent paid only $100.00 toward the $1,635.80 debt and submitted a payment schedule. This payment schedule was submitted in the form of a sworn and notarized affidavit. According to this schedule, the debt would be paid in full by June 30, 1986. Respondent never made one payment pursuant to this schedule. On July 11, 1986, she submitted a revised payment schedule in a letter in which she cited financial difficulties as the reason for failing to follow the previous plan. On July 17, 1986, according to the plan, Respondent paid $100.00 toward her debt. Thereafter, Respondent failed to follow the revised payment plan.

The Council attempted, unsuccessfully, to contact Respondent during July, August and September. Finally, after allowing Respondent approximately 6 months for repayment, Council referred the matter to its attorney. The Council attorney contacted Respondent and on October 24, 1986, Respondent paid $1,045.00 toward her remaining debt. In a note submitted with the $1,045.89 payment Respondent wrote "I hope that upon payment you will consider withdrawing your complaint against me." On October 28, 1986, and October 31, 1986, Respondent paid the remaining balance of $400.00 in increments of $100.00 and $300.00 respectively. It is of considerable interest that these last three payments, comprising the bulk of the debt ($1,445.00), were not made until after Respondent was contacted by an attorney and thought a complaint had been filed against her.

Attorneys are subject to discipline for matters not strictly relating to the practice of law. *South Carolina Real Estate Commission v. Boineau*, 267 S. C. 574, 230 S. E. (2d) 440 (1976). Respondent was entrusted with money which she put to her own use, depriving the Girl Scouts of their funds for seven months. She wrote repayment checks which she had

no authority to draw by forging her husband's signature. The account on which these checks were written was a closed account. Respondent's conduct constitutes breach of trust accompanied by fraud. An act in which fraud is an ingredient involves moral turpitude. *State v. Horton*, 271 S. C. 413, 248 S. E. (2d) 263 (1970). Further, her conduct involved dishonesty, deceit and misrepresentation. We find that Respondent's conduct violated DR 1-102(A)(3) and DR 1-102(A)(4) and the Rule on Disciplinary Procedure, Sections 5(B) and 5(D). The authority to discipline attorneys and the manner of discipline given rests entirely with this Court. *Burns v. Clayton*, 237 S. C. 316, 117 S. E. (2d) 300 (1960). We find suspension from the practice of law in this State for a period of one year to be the appropriate sanction in this case. Respondent hereby is

Suspended for one year.