## 23823

In the Matter of Larry E. GATES, Jr., Respondent.
(428 S.E. (2d) 716)

Supreme Court

*Atty. Gen. T. Travis Medlock* and *Asst. Attys. Gen. James G. Bogle, Jr.,* and *J. Emory Smith, Jr.,* Columbia, *for complainant.*

*Larry E. Gates, Jr., pro se.*

Submitted Feb. 9, 1993.

Decided March 15, 1993.

*Per Curiam:*

In this attorney grievance proceeding, respondent admits that he has committed ethical violations and consents to disbarment. We have previously publicly reprimanded respondent, *In re Gates,* 295 S.C. 516, 369 S.E. (2d) 841 (1988), and we now accept the present admission and disbar him.

### Financial Irregularities

Respondent admits that from May 1, 1990, through December 5, 1991, on numerous occasions he wrote checks on his trust accounts without sufficient funds in the accounts to cover the checks. He wrote checks on his trust and escrow accounts for personal matters, such as payment of a personal loan. Additionally, respondent wrote checks on the account to pay an employee of his office, to an individual that was not for proper trust purposes, and deposited trust and escrow account funds to his personal accounts. Respondent further admits that in October 1990, November 1990, January 1991, and February and March 1991, he engaged in "check kiting" schemes, in violation of federal law, by knowingly covering checks drawn on insufficient funds with worthless checks deposited from other accounts and taking advantage of the lag time necessary for clearance of the checks to keep the "kite" afloat.

Respondent admits that in a previous conditional admission submitted to the Board of Commissioners on Grievances and Discipline (the Board), he minimized and misrepresented the extent of his misuse of funds in his trust and escrow accounts. Respondent falsely contended that no funds were converted

by him for his own use and that no client funds were involved, and indicated that his wife was responsible for the overdrafts.

## LaFon Matter

Respondent was retained to represent Mr. and Mrs. LaFon in the refinancing of their residence. In June 1990, the LaFons authorized respondent to disburse the proceeds of a loan made by Coastal Federal. Later that month, Coastal Federal issued a check for $44,810 to respondent's escrow account. Respondent was to pay $25,718.87 to Fleet Funding but instead converted it to his own use.

In early September 1991, the LaFons received a new payment booklet from Fleet Funding and notified Coastal Federal because they understood Fleet Funding had been paid in full. Coastal Federal contacted respondent who stated he would provide them with a copy of the cancelled check or a copy of the satisfied note and mortgage from Fleet Funding. Coastal Federal repeatedly called respondent in attempts to get the documentation and finally in late October 1991 called Fleet Funding. At that time, Fleet Funding told Coastal Federal that the loan had been paid in full with a check written on respondent's trust account in late September 1991. Between the closing of the loan in June 1990 and the payment in September 1991, respondent admits he made regular payments on the LaFons' Fleet Funding loan from his trust, escrow and other accounts.

## Coleman and Verraneault Matters

Respondent admits that during the year 1992, he disbursed money from his trust account for real estate transactions although he did not have all the funds on hand for the disbursements. Respondent would disburse funds in one closing by using funds that were on hand for a later closing. In some instances he would continue to make monthly payments on mortgages that should have been paid off in full at the closing.

Respondent admits that he owes his client Mr. Coleman $87,000 for his real estate closing, and because of respondent's conduct Mr. Coleman has been served with foreclosure notices on his property. Respondent also admits that he owes a bank $23,307.16 for the Verraneault's closing.

Finally, respondent admits that he mishandled approxi-

mately $11,000 in title insurance premiums in the Coleman and Verraneault matters, and that Lawyers Title Insurance Corporation has not been paid that sum.

### Duckworth and Pitmon Matters

Coastal Federal issued a closing package to respondent on September 9, 1991, for Therman and Vera Duckworth to refinance their residential mortgage. On September 26, 1991, the Duckworths signed the documents even though Coastal Federal had not received the review package to make any necessary corrections. Respondent informed the Duckworths that the loan was closed. Coastal Federal received the review package from respondent on September 30, 1991, the date the loan was to disburse. The package did not include many necessary items and respondent admits the Duckworths had to return to his office and approve the necessary corrections in the documents. The disbursement did not actually occur until October 2, 1991.

Coastal Federal also issued a closing package to respondent on September 25, 1991, to refinance a loan for Patrick and Sandra Pitmon. Respondent sent an incomplete review package back on October 16, 1991, and Coastal Federal had to call his office and inform his secretary of a lengthy list of items needed. Loan papers were signed on October 16, 1991, for disbursement on October 22, 1991, but respondent admits that disbursement did not occur until October 29, 1991, when respondent finally furnished the information necessary to disburse the loan.

### Yoho Matter

Mr. Yoho retained respondent in late 1987 to represent him in an action against his ex-wife who he asserted had forged his name to buy a car and get a car loan. Respondent prepared the summons and complaint, dated August 4, 1988, filed them on November 7, 1988, and served them on May 9, 1989. On June 13, 1989, respondent filed an affidavit of default. In fact, the defendant's answer and counterclaim had been served by mail on May 22, 1989, along with a request for admissions, and on July 14, 1989, an affidavit of default was served on respondent. Ms. Yoho's attorney also moved for summary judgment because of respondent's failure to respond to the request for

admission. The action was dismissed on July 31, 1989, pursuant to Rule 40(c)(3), SCRCP.

On October 11, 1989, respondent again served a summons and complaint on Ms. Yoho which was dated October 5, 1989, and had been filed on October 9, 1989. On October 20, 1989, Ms. Yoho's attorney hand-delivered to respondent a summons and counterclaim, request for admissions, interrogatories, and notice to produce. The counterclaim contended that no liability existed and that Mr. Yoho had committed a tort of abuse of process that had caused Ms. Yoho damages and loss of time in investigating the complaint and in defending the action. On November 10, 1989, respondent replied to the answer and counterclaim but did not respond to the request for admissions until December 27, 1989. No responses to the interrogatories or the notice to produce were served.

On February 14, 1990, Ms. Yoho's attorney moved to compel as to the interrogatories and notice to produce, and also as to the request for admissions since the denials served by respondent were insufficient. An award of expenses related to the motions to compel was also requested. The motions to compel were granted and, because respondent did not timely comply with the order, he paid $350 in attorney fees and costs to Ms. Yoho's attorney.

A hearing on the merits was held on May 1, 1990, but Mr. Yoho did not appear because respondent failed to inform him of the hearing and made no effort to notify him of it until the day of the hearing. Respondent admits that he falsely told the court at the hearing that Mr. Yoho had been notified. The court ordered a nonsuit with prejudice on Mr. Yoho's claim because of his failure to appear.

Respondent did not cross-examine Ms. Yoho or any of her witnesses and did not make any argument against her claim. Ms. Yoho was granted judgment on her counterclaim for $3,200. Respondent did not inform Mr. Yoho of the result of the hearing until Mr. Yoho had waited for two hours in respondent's office. Respondent admits that he told Mr. Yoho that he would have to wait until the court issued an order and respondent would be in touch with him but he never contacted Mr. Yoho again.

By letter dated June 18, 1990, the Board notified respondent that a complaint regarding his representation of Mr.

Yoho had been received and respondent was asked to respond within ten days. On July 10, 1990, respondent was again asked to respond. Finally, on July 20, 1990, because respondent still had not responded, a member of the Board was asked to investigate the matter.

On July 27, 1990, the Board received a response from respondent dated July 23, 1990, which respondent admits contained false statements that respondent and his staff had tried to reach Mr. Yoho several days before the May 1 hearing. The response also falsely stated that the circuit judge who heard the matter was inclined to dismiss it because it was a domestic dispute, when in fact the judge indicated that the action had been brought to harass Ms. Yoho and he unhesitatingly granted her judgment.

As a result of the misconduct set forth above, respondent has failed to keep client funds separate from his own funds; commingled client funds, personal funds and other office funds; appropriated client funds to his own use; engaged in conduct involving dishonesty, fraud, deceit and misrepresentation; engaged in conduct involving moral turpitude; committed criminal acts that reflect adversely upon his honesty, trustworthiness and fitness as a lawyer; neglected legal matters entrusted to him; failed to provide competent representation for his clients; knowingly made false statements of facts; failed to seek the lawful objectives of his client through reasonably available means; failed to carry out a contract of employment with a client; prejudiced and damaged his client during the course of the professional relationship; knowingly made false statements of material fact in connection with a disciplinary matter; failed to disclose facts necessary to correct a misapprehension known by him to have arisen in the disciplinary matter; failed to cooperate with the investigations of the Board; engaged in conduct tending to pollute the administration of justice and bring the legal profession into disrepute; engaged in conduct demonstrating a lack of professional competence; and engaged in conduct demonstrating unfitness to practice law.

It is therefore ordered that respondent shall be disbarred from the practice of law in this State. Respondent shall make full restitution of all sums he owes as a result of his mishandling his trust, escrow and other accounts. Respondent has represented to this Court that all sums of money owed are

referenced in this opinion. Should any further claims come to light, restitution shall also be made on them. No petition for reinstatement shall be entertained until respondent shows proof that all sums claimed to be owed because of respondent's conduct of his law practice have been paid.

Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with subdivision 30 of Rule 413, SCACR.

Disbarred.