610 S.E.2d 803

**In the Matter of Thomas E. RUFFIN, Jr., Respondent.**

**No. 25956.**

Supreme Court of South Carolina.

Heard Feb. 3, 2005.

Decided March 21, 2005.

Attorney General Henry Dargan McMaster and Senior Assistant Attorney General James G. Bogle, Jr., both of Columbia, for Office of Disciplinary Counsel.

Desa A. Ballard, of West Columbia, for respondent.

PER CURIAM:

In this attorney disciplinary matter, the Commission on Lawyer Conduct filed formal charges against respondent, Thomas E. Ruffin, Jr. After a hearing, the Panel recommended an indefinite suspension.

## FACTUAL BACKGROUND

The charges against respondent stem from his involvement in a real estate deal with two doctors. The Doctors and respondent formed a limited liability company (LLC) for the purpose of purchasing a lot and constructing a building in which respondent could rent law office space. The agreement was for the Doctors to provide the purchase money and then become "silent partners" with respondent. Respondent's

duties, as the Doctors understood them, were to: (1) handle all architectural fees at no cost to the Doctors; (2) perform all of the legal work involved at no cost;[1] (3) use his contacts in the area with a contractor to construct the building and supervise all construction; and (4) lease the building from the LLC at a fair market value, with plans for the Doctors to get their initial investment back in seven years, and thereafter the LLC would turn a profit for all members.

An attorney, other than respondent, closed a $300,000 construction loan from Anchor Bank on March 24, 1998. Subsequently, respondent opened the LLC account with Anchor Bank. On the day the LLC account was opened, respondent wrote a check, payable to himself, labeled "costs/expenses" in the amount of $15,000, and then deposited the check into his personal bank account. This check was the beginning of many LLC checks that respondent would write to himself or his law firm. Respondent did not inform the Doctors he was going to write checks from the LLC account to himself and his firm, nor that he would do so in order to pay vendors out of his personal or law firm accounts.

The allegations of misconduct against respondent in the Formal Charges cover four areas: (1) that respondent engaged in a scheme to misappropriate funds from the LLC; (2) that respondent drafted or participated in the last-minute submission of a settlement agreement, between he and the Doctors, that contained elements inconsistent with settlement agreements he had already signed or put on the record before the circuit court; (3) that respondent participated in or authorized frivolous litigation; and (4) that respondent failed to cooperate with the disciplinary investigation. We separate the allegations into these four categories: The LLC, Misappropriation of Funds, The Litigation, and Failure to Cooperate.

## The LLC

A few months after the LLC closed on the construction loan at Anchor Bank, respondent convinced the Doctors to refinance the loan for $360,000 at another bank. Respondent

---

1. Respondent testified he was not acting as an attorney for the LLC, except for two mechanic's lien actions that arose later; and that he simply promised the Doctors he would be able to have any legal matters regarding the LLC completed at a reduced rate by other attorneys.

assured the Doctors the extra $60,000 would never actually be needed and that he would pay the entire amount back. An attorney, other than the previous closing attorney and respondent, conducted the closing for the refinancing.

Subsequently, respondent met with the Doctors and informed them that, although he had paid the contractor for the building being constructed, the contractor had not paid two vendors who then filed mechanic's liens as a result. One of the Doctors testified respondent stated the Doctors needed to place more money in the LLC account to pay the liens in order to avoid a bad credit rating. Respondent explained that the vendors who filed the liens had a legal right to do so; however, the Doctors believed this advice was incorrect. The Panel found respondent had given false legal advice to his clients.

In September 1998, the Doctors requested the LLC records from respondent so that they could examine them. After repeated delays by respondent, the Doctors contacted respondent who stated he had taken all the records to Greg Lipe, an accountant. Respondent had not in fact taken any records to Lipe at this time. The Doctors' accountant, Lawrence D. Guerry, finally retrieved the records directly from the bank.

When the Doctors examined the bank records, they were disturbed because respondent had written LLC checks to himself, his law firm, to his wife in one incident, and because the account had been subject to several insufficient funds fees and other bank fees indicating a mismanagement of the account by respondent. The Doctors also discovered that at least three LLC checks and possibly more, totaling over $13,800, had been written to the respondent's law firm for legal fees. The Doctors never received a bill or an accounting from respondent has to how he had earned the alleged legal fees.

When a settlement could not be reached between the Doctors and respondent with the assistance of their respective attorneys, the Doctors filed a suit against respondent and his firm in July 1999. At the end of July, the attorneys placed a settlement agreement on the record in front of a circuit court judge that provided respondent would purchase the Doctors'

interest in the LLC for $148,000. The closing did not occur as planned and respondent requested an extension of time.

A closing was eventually set for October 6, 1999. However it did not occur because, on the morning of the closing date, respondent's attorney, Craig Young, faxed a Severance Agreement to the Doctors' attorney, Jerome Askins. This agreement contained items that were not agreed upon. The details of this incident are discussed below under the heading, "The Litigation."

After a motion to compel settlement and other negotiations, the litigation was eventually settled and the building was sold. As part of the settlement, respondent paid the Doctors the amount of their net loss from the venture. Therefore, the Doctors recovered the money they had lost.

The Panel found that, while respondent contended he was simply a business partner with the Doctors in this venture and did not perform legal services on their behalf, the facts showed otherwise given that respondent acted as an attorney for the LLC regarding the mechanic's liens and given that he had written LLC checks, with the label "legal" or "legal fees" to his law firm.

*Misappropriation of Funds*

Respondent admits he did not maintain detailed records of the transactions involving the LLC account and that he is unable to provide an accounting of the funds that were deposited into the LLC account or to trace the funds into and out of the account. The Panel found it was clear respondent was writing checks back and forth from his two law firm accounts (one at Anchor Bank and one at Carolina First Bank), his personal account, and the LLC account. The Panel stated respondent was expending sums from all of these accounts for items totally unrelated to the building being constructed by the LLC. The Panel found respondent often had negative balances in his personal and law firm accounts.

Although there were numerous instances of check writing misconduct, for brevity we cite only two examples:

    (1) Respondent wrote LLC check number 115, in the amount of $5,000 to himself, and deposited it into his personal account at Anchor Bank on the same day. The

balance in his personal account had been negative (-) $211.95 three days earlier. On the date of the deposit of the LLC check, respondent's personal account balance rose to $3,924.06.

(2) Respondent wrote LLC check number 143, to "Thomas E. Ruffin, Jr., P.C.," in the amount of $5,550. A deposit was made into the law firm general account (at Carolina First Bank) of $5,500 on July 8 and $50 on July 9. On July 8, the balance in the law firm account rose to negative (-) $955.13 but dropped to negative (-) $5,005.13 on July 9. It rose to $1,494.87 on July 13, 1998, aided by a deposit of $6,500 on that day. That rise was a result of the deposit of LLC check number 151, in the amount of $6,500, written to "Ruffin Law Firm—General Account." That month, there were nine insufficient funds fees on respondent's law firm account at Carolina First Bank.

Respondent's accountant, after analyzing the cost of the construction project and respondent's transfer of funds from the LLC account to respondent's law firm accounts or personal account, determined that the total amount due appeared to be $30,390.70. The Attorney to Assist (ATA), who was appointed to investigate this matter, concluded there was a total shortage of $30,023.45.[2] The Doctors' accountant, Lawrence D. Guerry, testified it was disturbing that respondent's LLC checks were almost always in round figures, which, he testified, is atypical of checks written to vendors in a construction project.

*The Litigation*

The Doctors' attorney, Jerome Askins, III, (Askins) testified that, in the beginning of his representation of the Doctors, he made several unsuccessful attempts to meet with respondent to discuss the LLC bank records. Once a meeting was held, it became apparent respondent had engaged in financial misconduct in relation to the LLC account. Askins filed suit on behalf of the Doctors when negotiations with respondent to buy the building were unsuccessful. The matter was finally

---

2. A circuit court order noted that it had been determined by accountants that there was $34,904.90 in LLC funds that could not be accounted for by respondent.

scheduled for a settlement and closing on October 6, 1999. On that date, Askins received a fax, which changed the previous agreement. He testified this new agreement, known as the Severance Agreement, was not a part of the settlement that had previously been placed on the record.

Paragraph 5 of the agreement stated that respondent had never served as an attorney for the Doctors or the LLC; however, respondent had in fact represented the LLC in mechanic's lien actions.

Paragraph 6 of the agreement faxed by respondent's attorney, Young, was a confidentiality clause and a statement of the penalty upon the Doctors if the confidentiality should be breached.[3]

Thereafter, Young filed a Counterclaim and Third Party Complaint involving RICO violations.[4] As a result, Askins had to withdraw from representing the Doctors and the Doctors had to find new counsel. Subsequently, the circuit court issued an order, which noted the third party action against Askins had been ended by the payment of $10,000 to Askins from respondent.

*Failure to Cooperate*

The Commission requested that respondent deliver certain bank records to the investigator. Respondent only partially complied with the request. He failed to provide all of the bank statements, cancelled checks, and deposit slips that were requested. Respondent admits that, due to poor record-

---

3. During respondent's attorney's testimony, it became clear that respondent's attorney, Craig Young, and not respondent, had inserted the offending paragraphs into the agreement.

4. A RICO violation is a violation of the Federal Racketeer Influenced and Corrupt Organization Act. Racketeering involves a person who uses extortion, loan sharking, bribery, or obstruction of justice to further his illegal activities. Usually this person uses some sort of authority or power to illegally persuade others to further his interests.

   Mr. Young explained he filed the third party complaint against Askins with a clear understanding of RICO violations. Young testified he filed the third party complaint as a result of Askins calling him and stating that Young would get his client to do what the Doctors wanted regarding the settlement or that Askins was going to get the solicitor's office and SLED involved. Respondent asserts he relied on Young's expertise in determining whether to file the RICO action.

keeping, he is unable to provide all of the requested financial information.

## Panel's Findings

The Panel found the following violations of Rule 7(a) of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: 7(a)(1), violating a Rule of Professional Conduct; 7(a)(3), failing to fully comply with a subpoena issued by the Commission; 7(a)(5), engaging in conduct tending to pollute the administration of justice or to bring the legal profession into disrepute or conduct demonstrating an unfitness to practice law; and 7(a)(6), violating the oath of office taken upon admission to practice law in this State.

The Panel further found respondent violated the Rules of Professional Conduct, Rule 407, SCACR. The Panel found violations of Rule 1.1, competence; Rule 1.2, scope of representation; Rule 1.5, fees; Rule 1.7, conflict of interest; Rule 1.15, safekeeping property; Rule 3.1, meritorious claims and contentions; Rule 3.3, candor toward a tribunal; Rule 3.4, fairness to opposing party and counsel; Rule 4.1, truthfulness in statements to others; Rule 8.1(b), failure to respond to a lawful demand from a disciplinary authority; Rule 8.4(a), violating the Rules of Professional Conduct; Rule 8.4(c), engaging in conduct involving moral turpitude; Rule 8.4(d), engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; and Rule 8.4(e) engaging in conduct prejudicial to the administration of justice.[5]

The Panel found respondent's misconduct was mitigated by the eventual settlement and the fact that respondent did not have a prior disciplinary record. The Panel concluded the appropriate sanction was an indefinite suspension and a requirement that respondent pay the costs of the proceedings. Both Disciplinary Counsel and respondent have raised issues regarding the Panel's report.

## ISSUES

I.  Did the Panel err by failing to find respondent had engaged in check kiting?

---

**5.** Regarding Rule 8.4, the Panel incorrectly lettered the subsections of the rule. The correct rules are noted above.

II. Did the Panel err by failing to find respondent had filed a third party RICO action without a sufficient factual basis?

III. Did the Panel err by finding respondent violated certain rules of the Rules for Professional Conduct?

## DISCUSSION

### I

Disciplinary Counsel argues the Panel erred by failing to find respondent had violated Rule 8.4(b) of the Rules for Professional Conduct, Rule 407, SCACR, by engaging in check kiting. Rule 8.4(b) defines attorney misconduct to include committing a criminal act that reflects adversely on a lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects.

We find the Panel did not err by failing to find a violation of Rule 8.4(b) because there was no evidence of check kiting. Check kiting involves creating artificial balances in an account until funds are received to cover shortages in that account. While respondent wrote checks from the LLC account presumably to cover his personal and law firm accounts that had insufficient funds to cover checks he had written from those accounts, there is no evidence respondent was engaged in an intentional scheme to kite checks. *Cf. In re Miller,* 328 S.C. 283, 494 S.E.2d 120 (1997) (disbarment administered for soliciting assistance of other persons to engage in check kiting); *In re Robson,* 318 S.C. 77, 456 S.E.2d 374 (1995) (disbarment administered for entering guilty plea to check kiting); *In re Gibbes,* 323 S.C. 80, 450 S.E.2d 588 (1994) (disbarment administered for devising and implementing check kiting scheme). Further, there is no evidence respondent was "knowingly covering checks drawn on insufficient funds with *worthless* checks deposited from other accounts and taking advantage of the lag time necessary for clearance of the checks to keep the 'kite' afloat." *In re Gates,* 311 S.C. 246, 247, 428 S.E.2d 716, 717 (1993) (emphasis added). The LLC checks respondent used to eliminate negative balances in his personal and law firm accounts were not worthless.

Accordingly, the Panel did not err by failing to find respondent had violated Rule 8.4(b) because there is no evidence respondent engaged in check kiting. *See In re Flom*, 356 S.C. 246, 588 S.E.2d 593 (2003) (disciplinary violation must be proven by clear and convincing evidence).

## II

■ Disciplinary counsel argues the Panel erred by failing to find respondent had, through his counsel, frivolously filed a third party RICO complaint against the Doctors' attorney, Jerome Askins. Specifically, Disciplinary Counsel argues the Panel erred by failing to find respondent had violated Rule 3.1, meritorious claims and contentions; Rule 3.3, candor to a tribunal; Rule 3.4, fairness to opposing party and counsel; and Rule 8.4 (misconduct), subsections (a), (d), and (e). However, the Panel in fact found respondent had violated all of those rules and that he had frivolously filed the RICO complaint. Therefore, Disciplinary Counsel's argument is without merit.

However, we disagree with the Panel's finding that respondent frivolously filed the RICO complaint because there is not clear and convincing evidence of this misconduct. *See In re Flom, supra* (disciplinary violation must be proven by clear and convincing evidence). Respondent testified he relied on the advice of his attorney because the area of RICO law was not within his area of expertise. Therefore, the Panel erred by finding respondent violated Rule 3.1, which states a lawyer shall not bring or defend a proceeding, unless there is a basis for doing so that is not frivolous.

## III

■ Respondent argues the Panel erred by finding he had violated certain Professional Rules. We agree with respondent in part.

Initially, we disagree with the Panel's finding that a legal relationship, outside of the mechanic's lien actions, existed between respondent and the Doctors. There is a dispute in the testimony as to whether a legal relationship existed. The Doctors testified respondent was to act as their attorney and the LLC's attorney by preparing documents related to the

LLC and by performing the closings on the real estate and the loan refinancing. Respondent testified he never informed the Doctors that he would be performing legal work and that he told the Doctors that he would be able to get legal work done by another attorney for a reduced rate. Consistent with respondent's testimony, the real estate and refinancing closings were performed by other attorneys. Further, another attorney assisted in the preparation of the LLC documents.

While the Panel finds a legal relationship existed partially on the basis that checks, denoted "legal" or "legal fees," from the LLC account were made out to respondent or his law firm, we do not find this fact dispositive. It is clear that attorneys, other than respondent, handled the legal issues that arose with the LLC. Therefore, it appears respondent may have used these particular checks to take money from the LLC account for a seemingly proper reason.

Given we may make our own findings of fact and conclusions of law in a disciplinary action, we find respondent did not have a general legal relationship with the Doctors and the LLC. *In re Wilkes*, 359 S.C. 540, 598 S.E.2d 272 (2004) (Court may make own findings of fact and conclusions of law in disciplinary action). The allegation that respondent's misconduct arose out of the existence of a legal relationship was not proven by clear and convincing evidence. *See In re Flom*, *supra* (disciplinary violation must be proven by clear and convincing evidence).

Because we find a general legal relationship did not exist between respondents and the Doctors or the LLC, we find the Panel erred by finding respondent violated Rule 1.2 (scope of representation), Rule 1.7 (conflict of interest), and Rule 1.15 (safekeeping property).

Respondent argues the Panel erred by finding he had violated Rule 7(a)(5), Rule 1.1, Rule 3.3., Rule 3.4, and Rule 4.1. We uphold the Panel's findings that respondent violated Rule 7(a)(5), Rule 3.3, and Rule 3.4 without comment.

Regarding Rule 1.1. (competence), we find the Panel did not err by finding a Rule 1.1 violation because respondent incorrectly advised the Doctors regarding mechanic's liens actions that had been filed against the LLC. Regarding respondent's misstatements to the Doctors, the Panel also found

respondent had violated Rule 4.1, which provides: "In the course of representing a client a lawyer shall not knowingly: (a) Make a false statement of material fact or law to a third person...." Whether respondent's advice was simply due to incompetence or due to respondent's desire to acquire more money from the Doctors is unclear. Because there is not clear and convincing evidence that respondent violated Rule 4.1, we find the Panel erred by finding respondent violated this rule. *See In re Flom, supra* (disciplinary violation must be proven by clear and convincing evidence).

## SANCTION

This Court has the sole authority to discipline attorneys and to decide the appropriate sanction after a thorough review of the record. *In re Thompson*, 343 S.C. 1, 539 S.E.2d 396 (2000). The Court may make its own findings of fact and conclusions of law, and is not bound by the Panel's recommendation. *In re Larkin*, 336 S.C. 366, 520 S.E.2d 804 (1999). The Court must administer the sanction it deems appropriate after a thorough review of the record. *Id.*

We have deemed indefinite suspension the appropriate sanction in similar cases. *See In re Perrow*, 346 S.C. 515, 552 S.E.2d 295 (2001) (indefinite suspension where attorney issued check to himself that exceeded his fee in several cases and used funds in escrow account to pay for repairs to residence); *In re Jenkins*, 346 S.C. 617, 552 S.E.2d 734 (2001) (indefinite suspension where attorney failed to respond to disciplinary authority and thereby admitted misconduct of failing to pay bar license fees, failing to comply with CLE requirements, and failing to appear as ordered by the Court). *See also In re Sipes*, 297 S.C. 531, 377 S.E.2d 574 (1989) (although practice of law not involved, Court ordered one-year suspension for attorney's misappropriation of Girl Scout cookie funds and attempt to repay funds through forged checks drawn on a closed account).

We indefinitely suspend respondent from the practice of law and order him to pay the costs of the disciplinary proceedings. If he has not already done so, within fifteen days of the date of this opinion, respondent shall surrender his certificate of admission to practice law in this state to the Clerk of Court

and shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR.

**INDEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.