639 S.E.2d 674

**In the Matter of C. Craig YOUNG, Respondent.**

No. 26241.

Supreme Court of South Carolina.

Heard June 20, 2006.
Decided Jan. 3, 2007.

Attorney General Henry Dargan McMaster and Senior Assistant Attorney General James Bogle, both of Columbia, for Office of Disciplinary Counsel.

Reynolds Williams, of Florence, for Respondent.

PER CURIAM:

The Full Panel (Panel) adopted the report of the Hearing Master finding Respondent's misconduct in litigation was more "unprofessional" than "unethical," and recommending that the Court discipline Respondent by issuing an admonition. The Office of Disciplinary Counsel (ODC) appeals, contending the Panel erred in failing to find Respondent violated the Rules of Professional Conduct, Rule 407, SCACR (RPC), to recommend a more severe sanction, and to require Respondent to pay $1,552.00 as the costs of the proceeding. We agree with ODC that Respondent violated the RPC, that a public reprimand is the appropriate sanction, and that Respondent should pay costs.

## FACTS

Respondent undertook the representation of an attorney (Ruffin) in litigation arising out of Ruffin's participation in a limited liability company (LLC). Ruffin and two doctors formed the LLC to purchase property and build an office building. Ruffin would be responsible for overseeing the construction and associated issues, and would be a tenant in the building, while the doctors would provide the financial backing.

In 1998, the LLC members began to feel uneasy about the business, and in 1999 the doctors commenced civil litigation on their individual behalves and on behalf of the LLC against Ruffin individually and against Ruffin's legal practice. The plaintiffs were represented by Jerome P. Askins, III, and the defendants by Respondent. Askins is a personal friend of the doctors, while Respondent was a friend of Ruffin. The Panel found, and the record supports the finding, that personal friendship adversely affected Respondent's professional judgment in this matter.

In July 1999, Respondent and Askins appeared before a circuit judge and the outline of a settlement agreement was placed on the record. The agreement had been roughed-out between Respondent and Askins at the courthouse that day. When Ruffin could not obtain financing in time to close the deal as agreed at the July hearing, the parties agreed to an extension. Relationships between the parties and between the

attorneys became increasingly acrimonious as it was learned that Ruffin had, in fact, misused LLC funds,[1] and as the settlement was postponed. The closing was reset for October 6, 1999.

On October 5 and 6, the parties executed a Revised Purchase Agreement. On October 6, Respondent faxed to Askins a document, labeled "Draft," entitled "SEVERANCE AGREEMENT, RELEASE AND HOLD HARMLESS, AND CONFIDENTIALITY AGREEMENT" (Severance Agreement). Two paragraphs of this Severance Agreement are at issue in the present disciplinary action:

> 5. In exchange for receiving the consideration set forth herein, [the Doctors] hereby agree and acknowledge that neither they nor [the] LLC have been a legal client of Thomas E. Ruffin, Jr. and/or Thomas E. Ruffin, Jr., P.C.

> 6. [The Doctors] agree to keep this Agreement, the reasons for withdrawing from the LLC, and all matters pertaining to the lawsuit captioned [Doctors] Individually and for the Benefit of [the] LLC, a *South Carolina Limited Liability Company v. Thomas E. Ruffin, Jr. and Thomas E. Ruffin, Jr.,* P.C. completely confidential. In the event that the existence of this Agreement or facts pertaining to the limited liability company and/or the above-referenced lawsuit become known and it can be proved by Mr. Ruffin that such knowledge has come about as a result of [the Doctors] breaching the Confidentiality Agreement, then [one Doctor] and/or [the other Doctor], their heirs and/or assigns shall repay the One Hundred Forty Eight Thousand and 00/100 ($148,000.00) Dollars set forth in this Agreement upon demand, plus interest at the rate of one and one half percent (1½%) per month.

We refer to Paragraph 5 as the "Legal Representation Clause" and Paragraph 6 as the "Confidentiality Clause."

These two paragraphs caused the entire settlement to fail. The doctors were unwilling to agree to the false [2] Legal Representation Clause, and unwilling to agree to the one-sided

1. Ruffin was indefinitely suspended for this misconduct. *In re Ruffin,* 363 S.C. 347, 610 S.E.2d 803 (2005).

2. As will be explained *infra,* Ruffin's firm had in fact represented the LLC in several mechanic's liens actions.

Confidentiality Clause. Part of the problem arose because these two paragraphs were "in addition" to the terms placed on the record before the circuit judge, and were not presented to the doctors until mere hours before the settlement agreement was to be consummated.[3]

■ After reviewing the Severance Agreement and speaking with the doctors, Askins called Respondent. The Panel found that the "telephone conversation became heated on both sides, and when Askins threatened to 'take Ruffin to the Bar' if Ruffin did not 'cooperate' in the settlement, Respondent said: 'I am not going to let [Ruffin] buy the building [from the LLC] and have the Doctors run to the Bar and yank his license.' "[4] Askins then faxed a letter to Respondent suggesting alterations to the Severance Agreement, including the deletion of both the Legal Representation Clause and the Confidentiality Clause. Respondent replied by sending an intemperate letter to Askins, stating among other things, that "as a result of your bad faith, the transaction and settlement cannot take place." Respondent subsequently sent Askins another letter, "clarifying" his earlier letter and "confirming" that, prior to sending the first letter, Respondent had offered to redraft the Legal Representation Clause to reflect that Ruffin's firm had, in fact, represented the LLC in some mechanic's lien matters, and offering to reword the Confidentiality Clause.

The events of October 6 led to a complete breakdown in relations between the parties and their attorneys. On October 15, 1999, Askins was served with Ruffin's Answer, Counterclaim, and Third–Party Complaint. The Third–Party Complaint drafted by Respondent alleged Askins and the doctors had violated the civil RICO Act[5] and had committed the tort

---

3. The terms agreed to at the hearing pertained primarily to the division of the LLC's assets, while the Severance Agreement was intended to establish the terms of the dissolution of the business relationship.

4. In making the finding that these two statements were made, the Hearing Master necessarily resolved credibility questions in favor of Respondent. While we are not bound by the Panel's findings, we give great weight to those findings which are premised on witness credibility. *E.g., In re Flom*, 356 S.C. 246, 588 S.E.2d 593 (2003).

5. RICO is an acronym for the Federal Racketeer Influenced and Corrupt Organizations Act. *See* 18 U.S.C. §§ 1961 *et seq.*

of outrage against Ruffin. Upon receipt of these pleadings, Askins withdrew from representation of the doctors and the LLC. Respondent withdrew soon after. The underlying suit was eventually settled by Ruffin's payment of sums to both Askins and the doctors, and the LLC.

## PANEL FINDINGS

The Panel found that Respondent was "aggressive" in propounding the Severance Agreement and in deciding to file the Third Party Complaint (RICO action). The Panel recommended Respondent be admonished "against emotional reactions and attachments in the practice of law, which can not only cloud judgment, recollection, and analysis, but also lead to intemperate conduct towards fellow members of the bar."

### A. Severance Agreement

The Panel concluded that by the time the October 1999 documents were prepared, the settlement agreement put before the circuit court in July 1999 "had simply . . . come off the rails. . . ." The Panel found Respondent believed the relationship between Ruffin and the doctors related solely to a business deal, and did not implicate the practice of law, but "was aggressively one-sided in his attempt to lay that factual issue to rest."[6] It found Respondent's aggressiveness in proposing the Severance Agreement was mitigated by the fact it was merely a draft, which Respondent quickly offered to correct when the "Legal Representation" error was pointed out. Finally, the Panel found "Respondent's judgment and memory were likely affected by the friendship with his client, and Respondent was erecting positive barriers to potential disciplinary action. Respondent should be admonished that his conduct here was unprofessional."

We defer to the Panel's findings and conclusions regarding the Severance Agreement.

---

6. We accept the Panel's conclusion that in drafting the Severance Agreement Respondent was influenced by his firmly held belief that the doctors and Ruffin had only a business relationship governed by applicable fiduciary duties and not a legal relationship in a general sense. *See also In re Ruffin, supra,* holding there was no "general legal relationship."

■ While the "Legal Representation Clause" was patently false, we defer to the Panel's finding, premised on its belief in Respondent's credibility, that the factual error in this clause was the result of an honest oversight by Respondent, which he immediately offered to correct when it was called to his attention. As to the "Confidentiality Clause," the Panel found it was merely a draft, created in the course of emotional litigation, which was the result of Respondent's overly-aggressive representation of Ruffin. We accept the Panel's findings here, but not without noting that based upon Respondent's conduct and statements at oral argument before the Court, we have grave reservations whether Respondent's aggressiveness in the Ruffin litigation was an isolated event, or whether Respondent approaches the practice of law in general from a gladiatorial perspective. Respondent would be well-served to reflect upon his attitude and demeanor.

## B. *RICO Claim*

■ ODC contends Respondent violated the RPC in filing the RICO claim. We agree.

The RICO complaint alleges that the doctors and Askins engaged in an enterprise using "the U.S. mails and the telephone systems to convey threats and other extortionate communications." These defendants were alleged to have violated state and federal laws, specifically two state statutes proscribing unlawful use of a telephone,[7] and blackmail,[8] and federal racketeering statutes.[9] The RICO complaint also alleged that the three defendants unlawfully conspired to violate these state criminal statutes and/or were accessories to their violation.

At the disciplinary hearing, Respondent testified that to the factual basis for the RICO claim:

1) Ruffin told him one of the doctors had, in a July 1999 telephone conversation, stated that if Ruffin did not settle the case in the manner the doctors felt like it

---

7. S.C.Code Ann. § 16–17–430.

8. § 16–11–640.

9. 18 U.S.C. §§ 1951; 1952; and 1957.

needed to be, then they would go to S.L.E.D. or the sheriff;

2) Askins told Respondent in a telephone conversation that he wanted to "stomp [Ruffin's] ass;"

3) Askins told Respondent in a phone call that if the case were not settled on the doctors' terms then the doctors would go to S.L.E.D., the solicitor's office, the attorney general's office, the sheriff or disciplinary counsel; and

4) The CPA involved in the case told Respondent that in a phone conversation Askins had told the CPA that if Ruffin did not settle on the doctors' terms, "then there would be disciplinary action involved."

Respondent testified he viewed the enterprise's common purpose to be to extort as much money as possible from Ruffin in settling the civil litigation and winding up the parties' business relationship.

Respondent also testified that while he did not dispute the right of any of the RICO defendants to report a crime, the threats in this case violated the blackmail statute because they were made with the intent to extort money from Ruffin.[10] When asked what evidence he had to support the claim that the defendants had violated the unlawful use of a telephone statute, which prohibits among other things profane, vulgar, indecent or immoral words over the phone, Respondent referred to Askins' threat to stomp Ruffin's ass, and to the extortionate threats as "immoral." We note that in Respondent's factual recitation, only one of the doctors is alleged to have made threats although both were sued.

The RICO complaint drafted by Respondent alleged a violation of 18 U.S.C. § 1957, which concerns engaging in monetary

---

10. While 'truth' is generally not a defense to blackmail charges based upon extortionate threats to expose non-criminal behavior, it is unclear whether the 'truth' of a threat to refer someone for criminal charges, i.e. that the person actually committed the offense, is a defense to extortion. See Annot., *Truth as a defense to state charges of criminal intimidation, extortion, blackmail, threats and the like, based upon threats to disclose information about the victim*, 39 A.L.R.4th 1011 (1985). We need not decide the novel issue today, but point out that Respondent never even considered whether threats to report a crime could be the basis of a criminal prosecution under the blackmail statute.

transactions in property derived from specific unlawful activities. When asked to explain the factual basis for this allegation, Respondent was unable to provide one, and testified he would have to do some research in order to answer. When he was then asked whether he had done any research prior to filing this RICO claim, Respondent replied he had not, but had instead relied upon knowledge gained in connection with other RICO claims he had handled.

Rule 3.1, RPC, provides that "A lawyer shall not bring . . . a proceeding . . . unless there is a basis in law and fact for doing so that is not frivolous. . . ." The comments to this rule state, in part, that lawyers are required "to inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions." It is apparent from Respondent's testimony that he did no investigation into either the state criminal law upon which his RICO complaint is predicated, nor did he conduct any research into the federal RICO law as it may apply to these facts before proceeding to make these grave allegations against Askins and the doctors. Respondent testified he checked with two (unnamed) members of his firm before filing the RICO complaint, at least one of whom urged him not to file. Respondent presents himself as a RICO expert, and accordingly cannot rely upon his consultations with others to insulate him from a finding that he brought a frivolous RICO claim. *Compare In re Ruffin, supra.*

The Panel found, based implicitly on a determination that Respondent was the most credible witness, that Askins and at least one of the doctors had made the statements against Ruffin that Respondent alleged they had made. However, whether these "threats" were violative of the state criminal blackmail statute or the unlawful use of a telephone statute is highly doubtful. What is clear is that Respondent had no facts implicating one of the doctors he sued, nor did he conduct any legal research before filing this complaint. Further, Respondent was unable to explain the legal basis for at least part of his pleading at this disciplinary hearing, and never contemplated whether South Carolina would recognize a blackmail violation where the defendant threatened to report the plaintiff's criminal activity to law enforcement and/or disciplinary authorities.

We find clear and convincing evidence that Respondent violated the following ethical rules in filing this retaliatory RICO complaint against the doctors and Attorney Askins: Rule 3.1 (lawyer shall not bring a frivolous proceeding); and Rule 1.1(5) (competent representation includes thoroughness and preparation).

## CONCLUSION

This Court may make its own findings of fact and conclusions of law regarding allegations of misconduct. *In re Ruffin, supra.* Based upon our review of the entire record in this matter, we find Respondent committed ethical misconduct in the RICO complaint matter. Further, we disagree with the Panel's recommendation that Respondent receive only an admonition for his misconduct in the Ruffin litigation, and instead impose a Public Reprimand.[11] Finally, we order that Respondent pay, within fifteen (15) days of the date of the filing of this opinion, $1,552.00 for costs.

**PUBLIC REPRIMAND.**

TOAL, C.J., MOORE, WALLER, BURNETT, JJ., and Acting Justice EDWARD B. COTTINGHAM, concur.

---

11. In 2005 we accepted an Agreement for Discipline by Consent in an unrelated disciplinary matter involving Respondent and imposed a public reprimand where Respondent admitted sending a settlement proposal which threatened criminal prosecution to gain an advantage in a civil matter, and which mischaracterized part of the proposed settlement as a gift. *In re Young,* 366 S.C. 180, 621 S.E.2d 359 (2005).